Steven A. TOLBERT, Appellant,

v.

AUTOMOTIVE FINANCE CORPORATION,
Respondent.

No. WD 71908.

Missouri Court of Appeals,
Western District.

May 17, 2011.

Jonathan B. Milbourn, Kansas City, MO, for appellant.

Keith C. Volpi, Kansas City, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, JAMES M. SMART, Judge and DAREN ADKINS, Special Judge.

LISA WHITE HARDWICK, Chief Judge.

Following a bench trial, Steven Tolbert appeals from a judgment ordering him to pay damages of $53,904.41 on a conversion claim filed by Automotive Finance Corporation. Tolbert contends the circuit court erred in: (1) determining he was not a *bona fide* purchaser of the vehicle at issue on the conversion claim; (2) denying his motion to vacate the judgment; and (3) awarding a judgment in excess of $25,000. For reasons explained herein, we find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

In 2003, Automotive Finance Corporation ("AFC") executed a contract to provide "floorplan financing" to R American Auto, Inc. ("R American"), a used car dealership, for the purchase of inventory. As collateral for the financing, AFC took a security interest in all of R American's present and future inventory. AFC filed a

UCC Financing Statement to record the security interest on December 16, 2003.

On August 24, 2006, R American purchased a white 2006 Corvette for its inventory. AFC took possession of the Corvette's certificate of title. On January 31, 2007, Kip Rowley, the owner of R American, gave AFC a business check for $43,220 as payment in full for the Corvette, and AFC provided Rowley with the certificate of title to the Corvette. The check was dishonored because R American's bank account had been closed. An agent of AFC went to R American's car lot to secure possession of the Corvette and discovered that it was not on the lot. AFC filed a lien on the missing vehicle.

On March 4, 2008, Steven Tolbert filed a petition, in the associate circuit division of the Jackson County Circuit Court, seeking a release of AFC's lien on the Corvette. Tolbert alleged that he was a "bona fide purchaser" of the Corvette from Ultimate Motor Cars, LLC, on January 21, 2007. AFC filed an answer to the petition and a counterclaim against Tolbert for conversion, seeking damages for the value of the Corvette.

During a bench trial on the petition and counterclaim, Tolbert testified that he paid $52,000 to Kip Rowley on November 2, 2006, and immediately took possession of the Corvette. He gave Rowley a check made out to "R American" for $50,900 and also paid $1,100 in cash. Tolbert did not receive a bill of sale, a receipt for his payment, the certificate of title to the Corvette, or any other paperwork at the time of his payment.

Tolbert testified that Rowley did not provide him with a bill of sale and the certificate of title to the Corvette until nearly three months later on January 21, 2007. The bill of sale, issued by "Ultimate Motor Cars, Inc.," indicated the sale was completed on January 21, 2007, and the purchase price was $52,099. The certificate of title indicated that R American acquired the Corvette on August 24, 2006, and then transferred the Corvette to Ultimate Motor Cars on October 20, 2006. Tolbert's name was listed both as the seller of the Corvette as agent for R American and as the buyer of the Corvette as agent for Ultimate Motor Cars. Tolbert testified that he inadvertently signed in the wrong spot as seller on the Corvette's certificate of title. Nevertheless, Tolbert wasn't concerned with these discrepancies because he believed Rowley did business as both R American and Ultimate Motor Cars. Tolbert said he was unaware of AFC's security interest until February 2007, when he attempted to have the Corvette titled in his name and learned about the lien.

Jason Yount, branch manager for AFC, testified that on September 7, 2006, R American paid AFC for the Corvette, and AFC gave R American the certificate of title to the Corvette. On December 12, 2006, R American gave the certificate of title back to AFC, AFC advanced R American credit for the Corvette, and R American "refloored" the Corvette. Before reclaiming the title, on December 12, 2006, an agent of AFC physically inspected the Corvette on R American's lot, verified the Corvette's VIN number, and ensured that the Corvette's certificate of title indicated that R American owned the Corvette. Yount explained that AFC would not have advanced credit to R American and accepted the Corvette's certificate of title on December 12, 2006, if at that time the certificate of title indicated that R American had transferred the Corvette to Ultimate Motor Cars on October 20, 2006.

At the close of evidence, the circuit court issued an order denying Tolbert's claim for a lien release on the Corvette and granting AFC's counterclaim for conversion. The

court scheduled a hearing to consider evidence of damages on the conversion claim.

On March 24, 2009, Tolbert filed a motion to vacate the order granting the counterclaim. Tolbert alleged that AFC had recently obtained final judgment in a suit against R American in an Indiana court in which AFC alleged R American had fraudulently disposed of the Corvette and committed check deception. Tolbert argued the election of remedies doctrine prevented AFC from prosecuting the conversion claim against Tolbert.

The circuit court denied Tolbert's motion to vacate the order granting the counterclaim. During the evidentiary hearing regarding damages, AFC submitted evidence indicating its damages for loss of the Corvette were $53,904.41. Tolbert subsequently filed a brief arguing AFC's damages were limited to $25,000, because he had filed the case before the associate division of the circuit court pursuant to Section 517.011. On November 30, 2009, the court issued a judgment awarding AFC $53,904.41. Tolbert appeals the judgment.

## STANDARD OF REVIEW

■ In a court-tried case, we affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Weber v. Moerschel,* 313 S.W.3d 220, 223 (Mo.App.2010). We view the evidence and inferences from the evidence in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences. *Essex Contracting, Inc. v. Jefferson Cnty.,* 277 S.W.3d 647, 652 (Mo. banc 2009). We defer to the trial court's factual resolutions and determinations as to witness credibility. *Id.*

## ANALYSIS

### Bona Fide Purchaser

■ In his first point on appeal, Tolbert asserts the circuit court's judgment in favor of AFC on the conversion claim is against the weight of the evidence. Tolbert argues the evidence established that he held legal title to the Corvette under Missouri law as a *"bona fide* purchaser for value."

■ A *bona fide* purchaser is one who pays valuable consideration, has no notice of outstanding rights of others, and acts in good faith. *Byrne Fund Mgmt., Inc. v. Jim Lynch Cadillac, Inc.,* 922 S.W.2d 434, 436 (Mo.App.1996). A party claiming to be a *bona fide* purchaser has the burden of proving those elements by a preponderance of the evidence. *Brown v. Mickelson,* 220 S.W.3d 442, 452 (Mo.App.2007). "Even if the prior transactions were fraudulent, [a buyer] takes good title if he is a *bona fide* purchaser." *Byrne Fund Mgmt., Inc.,* 922 S.W.2d at 436.

■ However, "[a] buyer will not be protected where he is put on notice of the irregularities in a seller's title either by defects in the face of the certificate or by other circumstances." *Landshire Food Serv., Inc. v. Coghill,* 709 S.W.2d 509, 513 (Mo.App.1986). "The requisite notice 'may be imparted to a prospective purchaser by actual or constructive notice of facts which would place a reasonably prudent person upon inquiry as to the title he is about to purchase.'" *Id. (quoting J.C. Equip., Inc. v. Sky Aviation, Inc.,* 498 S.W.2d 73, 76 (Mo.App.1973)).

In this case, the record indicates Tolbert was aware of unusual circumstances throughout the transaction that would have caused a reasonably prudent person to question whether he obtained good title

to the Corvette. Tolbert claims to have paid for and taken possession of the Corvette from R American on November 2, 2006, without examining the Corvette's certificate of title or even receiving a bill of sale. Tolbert admits he did not receive a bill of sale and the certificate of title to the Corvette until nearly three months later. The bill of sale indicates the Corvette was sold to him by Ultimate Motor Cars on January 21, 2007, which is inconsistent with Tolbert's assertion that he purchased the Corvette with a check dated November 2, 2006, made out to R American. The certificate of title also indicates that Tolbert operated as the seller of the Corvette for R American and the buyer of the Corvette for Ultimate Motor Cars. As a representative of R American, Tolbert would have known about AFC's floorplan financing agreement and its security interest in the Corvette.

Jason Yount's testimony contradicted Tolbert's account of the purchase transaction. Yount testified that on December 12, 2006, an agent of AFC physically inspected the Corvette on R American's lot and verified that the Corvette's certificate of title indicated that R American was owner. Yount also testified that AFC had possession of the certificate of title until January 31, 2007, when it received the check from Rowley that was later dishonored. Thus, Yount's testimony supports an inference that Tolbert could not have had possession of the Corvette until after December 12, 2006, and possession of the certificate of title until after January 31, 2007. This testimony rebutted Tolbert's allegations that he acted in good faith.

Tolbert failed to meet his burden of proving that he was a *bona fide* purchaser of the Corvette. Based on the circumstances surrounding his alleged purchase of the vehicle, Tolbert had actual or constructive notice of facts that cast doubt on the validity of his ownership interest. The evidence, viewed in a light most favorable to the judgment, did not establish that Tolbert acted in good faith or that he was unaware of AFC's lien on the Corvette. Because Tolbert failed to prove he was a *bona fide* purchaser of the vehicle, the court did not err in granting AFC's claim for conversion. Point I is denied.

### *Motion to Vacate Judgment*

In Point II, Tolbert contends the circuit court erred in denying his motion to vacate the judgment because the election of remedies doctrine precluded AFC from recovery on the conversion claim. Tolbert asserts AFC is entitled to no further relief because it already obtained a final judgment on a fraud claim against R American in Indiana regarding the Corvette.

The election of remedies is an estoppel doctrine that exists to prevent double recovery for a single wrong. *Ellsworth Breihan Bldg. Co. v. Teha Inc.*, 48 S.W.3d 80, 82 (Mo.App.2001). The doctrine is based on theory that "where a party has the right to pursue one of two inconsistent remedies and makes an election, institutes suit, and prosecutes it to final judgment, that party cannot thereafter pursue another and inconsistent remedy." *Scott v. Blue Springs Ford Sales, Inc.*, 176 S.W.3d 140, 142 (Mo. banc 2005). The doctrine is only applicable when a party has more than one remedy to correct a single wrong and the remedies are inconsistent. *Ellsworth Breihan Bldg. Co.*, 48 S.W.3d at 82.

"To determine whether remedies are inconsistent, we look at whether one theory alleges what the other denies or whether one theory is repugnant to another." *Id.* If the remedies are concurrent and consistent, or cumulative, the doctrine of election of remedies does not apply. *Id.* The doctrine also cannot be ap-

plied unless the opposing party has already received full satisfaction of a judgment for the same wrong. *Stromberg v. Moore*, 170 S.W.3d 26, 30 (Mo.App.2005).

■ Tolbert's point on appeal focuses on an allegation in AFC's Indiana petition which alleges that R American "sold [the Corvette] out of trust." He argues this allegation of a sales transaction is inconsistent with AFC's assertion of a claim against him for conversion in the instant case.

We disagree. AFC's allegation that the Corvette was "sold out of trust" is not an allegation that the Corvette was sold *to Tolbert*, but that R American's actions in disposing of the Corvette violated AFC's rights in the Corvette. Nor does the allegation that the Corvette was "sold out of trust" constitute an admission by AFC that Tolbert is a *bona fide* purchaser of the Corvette for value.

Our review of the record indicates that AFC's two lawsuits sought relief against two defendants for two independent wrongs. In the Indiana lawsuit, AFC asserted claims of fraud and check deception against R American for its conduct in submitting a bad check and then transferring the Corvette in violation of AFC's security interest. In the instant lawsuit, AFC asserted a claim for conversion against Tolbert for taking possession and control of the Corvette in defiance of AFC's possession rights. These claims may be concurrent or cumulative, but they are not inconsistent. AFC was entitled to seek judgment against R American and Tolbert for their separate acts of misconduct with regard to the Corvette.

Additionally, we note that the election of remedies doctrine is not applicable in this case because the circuit court did not grant AFC a double recovery. A fundamental premise of the doctrine is that the *satisfaction* of two judgments, and not merely the *existence* of two judgments, equates to a double recovery. *Ellsworth Breihan Bldg. Co.*, 48 S.W.3d at 82. The record indicates that AFC had not obtained satisfaction of the judgment in the Indiana case by the time the circuit court entered judgment in this case. In his motion to vacate, Tolbert offered no evidence to suggest that R American can pay the judgment in the Indiana case or that the possibility of AFC's recovery on that judgment is anything more than speculative.[1] Speculation is an insufficient basis to support an allegation of double recovery. *Ozark Air Lines, Inc. v. Valley Oil Co., L.L.C.*, 239 S.W.3d 140, 147 (Mo.App.2007).

Tolbert failed to demonstrate that AFC's conversion claim against him was inconsistent with the Indiana lawsuit or would result in a double recovery. Thus, the circuit court did not err in denying his motion to vacate the judgment. Point II is denied.

### Award in Excess of $25,000

■ In Point III, Tolbert asserts the circuit court lacked jurisdiction to grant judgment in favor of AFC for $53,904.41. He contends he filed the petition before an associate circuit judge pursuant to Chapter 517 and, thus, any award of damages is limited to $25,000.

The Missouri Constitution provides that "[a]ssociate circuit judges may hear and determine all cases, civil or criminal and all other matters as now provided by law for magistrate or probate judges." Mo. Const. art. V § 17. *See also* § 478.220 ("Circuit judges and associate circuit

---

1. In the Indiana case, the court found that R American defaulted on its security agreement and defrauded AFC with regard to multiple vehicles. The judgment ordered R American to pay damages in the amount of $4,430,881.75, plus interests and costs.

judges may hear and determine all cases and matters within the jurisdiction of their circuit courts, subject however, to the following restrictions . . ." [which are not applicable to the instant case] ).

Chapter 517 provides for special procedures in certain classes of cases filed before associate circuit judges. § 517.011.[2] "Chapter 517 . . . creates procedures applicable to civil cases originally filed before magistrate judges in which the prayer does not exceed $25,000 [and] was simply an effort to retain a separate set of procedures for claims of a lower monetary amount." *B.C. Nat'l Banks v. Potts*, 30 S.W.3d 220, 222–23 (Mo.App.2000). "[A]ssociate circuit judges are no longer burdened with any monetary limitation on their subject matter jurisdiction." *Spino v. Bhakta*, 174 S.W.3d 702, 709 (Mo.App. 2005). "Section 517.011.1 does not set forth the jurisdiction of associate circuit judges but rather provides a monetary limitation for cases where the procedural rules of Chapter 517 will apply." *Mogley v. Fleming*, 11 S.W.3d 740, 746 (Mo.App. 1999). Thus, "[a]ssociate circuit judges have concurrent original jurisdiction of all causes heard by circuit judges, with no monetary limitations." *Id.* at 746–47 (*citing* § 478.220).

This court has previously explained:

[T]he monetary distinction between associate circuit divisions and circuit divisions is alive but it is not jurisdictional. The distinction lies not with what kind of division the litigants are in but, rather, what kind of action was filed. If it is filed under Chapter 517, then the recovery limit is $25,000. This procedural limitation has nothing to do with the subject matter jurisdiction of the associate circuit division, which has the authority to hear cases where the disputed amount is in excess of $25,000; just not if the case was filed pursuant to Chapter 517.

*Spino*, 174 S.W.3d at 710.

This case does not fall within the limitations of Chapter 517 because Tolbert's requested relief is not of the type governed by the statutory scheme. In his petition before the associate division of the circuit court, Tolbert prayed for a judgment determining he held title to the Corvette free of AFC's interest. Tolbert sought declaratory relief, not money damages, and his claim is not otherwise subject to the procedural rules in Chapter 517. *See*

---

**2.** Section 517.011 provides:

1. The provisions of this chapter shall apply to the practice and procedure in civil cases originally filed before associate circuit judges in hearing and determining the following cases or classes of cases:

(1) Except as otherwise provided by law, all civil actions and proceedings for the recovery of money, whether such action be founded upon contract or tort, or upon a bond or undertaking given in pursuance of law in any civil action or proceeding, or for a penalty or forfeiture given by any statute of this state, when the sum demanded, exclusive of interest and costs, does not exceed twenty-five thousand dollars;

(2) All actions against any railroad company in this state, to recover damages for killing or injuring horses, mules, cattle or other animals within their respective counties, without regard to the value of such animals, or the amount claimed for killing or injuring the same;

(3) All cases arising under chapter 213, 272, 302, 303, 388, 429, 430, 444, 482, 521, 533, 534, 535, or 577;

(4) In counties of less than seventy thousand inhabitants, when a circuit judge is absent from the county, cases that a circuit judge can hear in chambers except where otherwise provided by law.

2. The provisions of this chapter shall not apply to the practice and procedure before associate circuit judges in hearing and determining cases, except as provided in subsection 1 of this section.

§ 517.011.1. AFC's counterclaim also did not fall within the parameters of Chapter 517, because the conversion claim sought damages against Tolbert for the fair market value of the Corvette at $52,000—an amount clearly in excess of the $25,000 limit.

Even if the provisions of Chapter 517 could have been applied in this case, Tolbert waived the monetary limitations by failing to object prior to judgment. *B.C. Nat'l Banks,* 30 S.W.3d at 223. As noted, Tolbert's assertion that the trial court failed to follow the procedures of Chapter 517 is not a jurisdictional claim that can be raised at any time. Rather, his claim is one of procedural error that has not been preserved for appeal. *Id.* Accordingly, Point III is denied.

## CONCLUSION

The judgment of the circuit court is affirmed.

ALL CONCUR.