**Zach McGUIRE, et al., Respondents,**

v.

**KENOMA, LLC, et al., Appellants.**

**No. WD 74022.**

Missouri Court of Appeals,
Western District.

June 26, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2012.

Application for Transfer Denied
Sept. 25, 2012.

---

Charles F. Speer, Kansas City, MO and Edward D. Robertson, Jr. and Anthony L. Dewitt, Jefferson City, MO, for respondents.

Mark W. Comley, Jefferson City, MO, for appellants.

Before Division Three: THOMAS H. NEWTON, Presiding Judge, JAMES M. SMART, JR., Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Synergy, LLC and Kenoma, LLC (collectively "Synergy"), appeal following a jury trial on claims of temporary nuisance which resulted in a judgment for damages in favor of Respondents. We affirm in part, and reverse in part.

### Factual Background

Synergy operates large scale hog farms in Barton County, Missouri. The Respondents/Plaintiffs in this case are twelve individuals who filed suit against Synergy claiming that its confined animal farming operations ("CAFO"), in this case hog farming operations, in Barton County con-

stituted a temporary nuisance beginning in 2007.[1]

As outlined by Synergy in its appellate brief, this hog farming operation was structured in the following manner:

> Kenoma operates a sow farrowing barn in Barton County, Missouri. The hogs located in the barn, and the pigs born to those hogs, are owned by Synergy. After the piglets are weaned from the sows in the Kenoma facility they are transferred to nurseries. Two of the nurseries to which the piglets are transferred are owned and operated by Wayne Nichols and Marcel Fischbacher. Wayne Nichols and Marcel Fischbacher operated nurseries under contracts with Synergy.... Paul Stefan owns the land and an irrigation system on that land where the effluent from the Kenoma wastewater lagoon is applied.

Br, pg. 8.[2]

Plaintiffs claimed that these CAFO's emitted foul smelling odors, other emissions and flies onto their individual farms and/or homes and substantially impaired the Plaintiffs' ability to use and enjoy their respective properties.

After a two week trial in April and May of 2011, the jury returned a verdict in favor of Plaintiffs.[3] The jury awarded compensatory damages to twelve of the Plaintiffs, as outlined below:

| Plaintiff | Against Defendant(s) | Verdict | Amount |
|---|---|---|---|
| Zach McGuire | Synergy/Kenoma | A–1 | $225,000 |
| Debbie Jo McGuire | Synergy/Kenoma | B–1 | $225,000 |
| Darvin Bentlage | Synergy (Nichols nursery) | C–3 | $ 75,000 |
| Darvin Bentlage | Synergy (Fischbacher nursery) | C–4 | $ 75,000 |
| Darvin Bentlage | Synergy (Fischbacher nursery) | C–6 | $ 75,000 |
| Patricia Bentlage | Synergy (Nichols nursery) | D–3 | $ 75,000 |
| Patricia Bentlage | Synergy (Fischbacher nursery) | D–4 | $ 75,000 |
| Patricia Bentlage | Synergy (Fischbacher nursery) | D–6 | $ 75,000 |
| Gregory Harris | Synergy/Kenoma | E–1 | $325,000 |
| Walter Howry | Synergy/Kenoma | F–1 | $ 75,000 |
| Cindy Howry | Synergy/Kenoma | G–1 | $ 75,000 |
| Dale Huber | Synergy/Kenoma | H–1 | $175,000 |
| Carol Huber | Synergy/Kenoma | I–1 | $175,000 |
| Kevin Huber | Synergy/Kenoma | J–1 | $175,000 |
| William Manka | Synergy/Kenoma | K–1 | $ 25,000 |
| Helen Manka | Synergy/Kenoma | L–1 | $ 25,000 |

The trial court denied Synergy's post-

1. We will refer to these individuals collectively as "Plaintiffs," and we will refer to them by name when addressing issues unique to an individual.

2. As originally filed, the lawsuit contained considerably more litigants, both plaintiffs and defendants. This Court need not outline the precise scope of each and every plaintiff and defendant that has been involved in this litigation in the past, and how or why every party left the instant litigation because it is beyond the scope of the pertinent issues on appeal. Several plaintiffs entered into settlements with varying defendants. Issues pertaining to settlements will be outlined in the analysis section only as relevant to the issues currently before this Court.

3. Some of the various plaintiffs' claims were rejected by the jury. Because no plaintiff appeals from these verdicts, this information is not relevant to our analysis and, therefore, omitted from the chart.

trial motions, and Synergy filed its Notice of Appeal.

Further details will be outlined as relevant in the analysis section herein.

## Analysis

Synergy's first two points are interrelated, and accordingly we analyze them collectively. In Point One, Synergy argues that the trial court "erred by admitting evidence of the Respondents' damages that were purportedly sustained after filing of suit because such evidence as a matter of law was inadmissible in that in a cause of action for temporary nuisance, such as the case at bar, recovery for damages (and any evidence thereof) is limited to those actually sustained *up to the filing of the suit*, which in this case was November 18, 2008." We disagree.

We outlined our applicable standard of review regarding this issue in *Secrist v. Treadstone, LLC*:

The admission or exclusion of evidence rests in the sound discretion of the trial court, and the court's decision will be reversed only if it constitutes an abuse of discretion. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). "The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id*. We review for prejudice, not mere error, and will reverse only if the error was so prejudicial that the defendant was deprived of a fair trial. *Elliott v. State*, 215 S.W.3d 88, 93 (Mo. banc 2007).

356 S.W.3d 276, 280 (Mo.App. W.D.2011).

 Here, Plaintiffs' allegations at trial were that the alleged nuisance,

CAFO, was temporary. This distinction is important because:

A nuisance can be temporary or permanent. *Cook v. DeSoto Fuels, Inc.*, 169 S.W.3d 94, 106 (Mo.App.2005). "A nuisance is temporary if it may be abated, and it is permanent if abatement is impracticable or impossible." *Peters v. ContiGroup*, 292 S.W.3d 380, 385 (Mo. App. W.D.2009). If a nuisance is found to be temporary, the defendant is legally obligated to terminate the injury. *Cook*, 169 S.W.3d at 107. Each day it continues is "considered a repetition of the original wrong, and successive actions accrue as to each injury[.]" *Id*. Whether a nuisance is classified as temporary or permanent determines the proper measure of damages. *Peters*, 292 S.W.3d at 385.

*McGinnis v. Northland Ready Mix, Inc.*, 344 S.W.3d 804, 812 (Mo.App. W.D.2011).

The gravamen of Synergy's argument on appeal is that "because Respondents made a claim for temporary nuisance, damages are properly allowable [only] up to the date the initial Petition was filed, i.e., November 18, 2008," and that any evidence pertaining to the nuisance *after* the filing of the Petition was improperly admitted because the "controlling case law on this issue" holds that "in an action for temporary nuisance," evidence pertaining to damages "should only be admitted from the time between the commencement of the liability and the date the lawsuit was filed."

The problem with Synergy's argument is that no *binding* authority has ever held that this is in fact the law in Missouri. While it is true that this Court has outlined damage limitations after the lawsuit is filed in temporary nuisance claims, we have never addressed in this context how this rule specifically relates to the trial court's broad authority to allow amend-

ed/supplemented pleadings pursuant to Rule 55.33.[4] In this case the trial court did allow Plaintiffs to amend their petition to include damages up to the deadline for completion of discovery in this matter. The propriety of this ruling is addressed under Point two.

█ Synergy primarily relies on two cases to support its proposition. "In suits for damages because of nuisances, damages may be allowed for injuries suffered up to the time of commencement of suit, or, if the suit be in equity for injunction with damages as an incident, up to the time of trial, that is, for damages already sustained." *Thompson v. Hodge,* 348 S.W.2d 11, 15 (Mo.App.1961).[5] "The recovery is for the damage actually sustained to the commencement of suit, but not for *prospective* injury." *Stevinson v. Deffenbaugh Industries, Inc.,* 870 S.W.2d 851, 855 (Mo.App. W.D.1993) (emphasis added).

█ But the thrust of these rulings is rooted in the principle that the "law assumes that a temporary nuisance will abate—if not by voluntary act of the tortfeasor then by judicial agency—and so confines recovery *to injury already accrued.*" *Stevinson,* 870 S.W.2d at 855 (emphasis added) (quoting *Rebel v. Big Tarkio Drainage Dist.,* 602 S.W.2d 787, 793 (Mo. App. W.D.1980) (overruled on other grounds)). "The only instances . . . where damages are awarded for injury which may be suffered *in the future* are those in which the nuisance is permanent and una-

batable." *Thompson,* 348 S.W.2d at 15 (emphasis added).

█ Here, there is no dispute that the only evidence allowed at trial pertained to damages already sustained by the Plaintiffs prior to trial[6], and thus no damages were awarded by the jury for "future" or "prospective" damages or damages that were not already "accrued." Thus, the trial court did not violate the admonitions in the above caselaw, by somehow awarding prospective damages to plaintiffs.[7] Synergy does not argue that the temporary nuisance abated at any time prior to the date through which the Plaintiff's were allowed to present evidence of damages. It was solely within Synergy's power and control to stop the accrual of damages at any time between the filing of the petition and the time of trial, simply by ceasing the operation of its CAFO's. To *require* Plaintiffs to bring a second lawsuit and to *require* Synergy to defend a second lawsuit regarding the damages that accrued between the date the petition was filed and the time of trial would be an extreme waste of judicial resources as well as a waste of legal fees and expenses for the parties, under the facts of this case.

█ In Point Two, Synergy argues that the trial court erred in allowing Plaintiffs to supplement their pleadings at the beginning of the trial, to include conduct that occurred up to the close of discovery, thereby making the evidence at issue in Point One relevant to the claims raised.

---

4. All rule citations are to the Missouri Supreme Court Rules (2012), unless otherwise indicated.

5. Here, it is undisputed that Plaintiffs' lawsuit solely sought monetary relief, and therefore not an equitable action.

6. In fact, no evidence of damages sustained after the conclusion of the discovery in this case, were allowed into evidence.

7. Indeed, our most recent holding in this area of the law states that the trial court has the discretion to admit evidence "through the time of trial, consistent with the standard for temporary nuisance damages." *McGinnis v. Northland Ready Mix, Inc.,* 344 S.W.3d 804, 813 (Mo.App. W.D.2011). In the case at bar the trial court limited the evidence of damages to the deadline when discovery ceased.

Synergy argues that the trial court erred by allowing the supplemental petition because "pursuant to Rule 55.33(d) ... extending the damages period was not a transaction, occurrence, or event happening since the date when suit was filed." The standard of review for whether a party will be allowed to supplement its pleadings is reviewed for an abuse of discretion. *Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389, 394 (Mo.App. E.D. 2000).

Rule 55.33(d) deals with "Supplemental pleadings," and states, in relevant part, the following:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit service of a supplemental pleading setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented.

Synergy argues that the trial court abused its discretion in allowing the supplemental pleading because "Rule 55.33(d) is intended to allow a party to supplement a pleading to include facts and events unknown at the time of the original filing." (citing *Miller v. Rothschild Mgmt. Group*, 184 S.W.3d 575, 577 (Mo.App. E.D.2005)). Synergy further argues that "Respondents, through their amended and substituted petition, have failed to provide any additional facts, events or occurrences that they were not aware of and were not included when they filed the original petition on November 18, 2008." We disagree.

Synergy's argument ignores the fact that as it pertains to a temporary nuisance "the defendant is legally obligated to terminate the injury" and "[e]ach day it continues is considered a repetition of the original wrong, and successive actions accrue as to each injury." *McGinnis*, 344

S.W.3d at 812. Over two years transpired between the filing of the lawsuit (November 18, 2008), to the start of trial (April 25, 2011). The unforeseeable "events that have happened since the date of the pleading" are that plaintiffs could *not* have foreseen whether Synergy would abate the nuisance after Plaintiffs filed suit, or whether Synergy would instead allow the nuisance to continue (thus causing successive actions to accrue as it pertained to each and every day thereafter). Here, Synergy chose the latter option, and thus Rule 55.33(d) empowered the trial court, in its discretion, to allow Plaintiffs to file a supplemental pleading.

Synergy also argues that the trial court abused its discretion in allowing Plaintiffs to supplement its pleadings because Rule 55.33(d) only permits supplementation "upon reasonable notice and upon such terms as are just." Synergy points to no authority whatsoever to support its conclusion that the trial court's ruling in this regard was somehow unreasonable or unjust.

" 'However, Rule 55.33 is to be applied liberally, and is based on the concept of whether a defendant has been given notice sufficient to defend himself against the claims.' " *Johnson v. Delmar Gardens West, Inc.*, 335 S.W.3d 83, 88 (Mo.App. E.D.2011) (quoting *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 116 (Mo.App. W.D.2006)). "Pleadings should not be amended during trial if the party adversely affected will not be afforded a reasonable opportunity to rejoin the allegations of the amended pleading." *Thompson*, 207 S.W.3d at 114 (Mo.App. W.D.2006) (citations omitted). "The real test is whether additional proof or additional witnesses for which a party is not prepared would be required to meet

the new allegations." *Id.*[8]

Here, the trial court allowed Plaintiffs to supplement their pleading to include Synergy's conduct up to the date of the end of discovery. Thus, Synergy was given ample time to defend against the conduct in question, which Synergy admits on appeal was of the same nature as the conduct that Synergy was engaging in prior to the lawsuit's filing. Specifically, the complained of conduct all pertained to Synergy's CAFO, the only distinction being on what day the specific offense occurred. Plaintiffs made no secret throughout these proceedings that it was their intent to present evidence of damages up until the nuisance ceased or the trial occurred. Synergy deposed the Plaintiffs regarding the damages they claimed to have suffered between the date the petition was filed and the time the respective depositions were taken. Synergy filed motions regarding this issue and the trial court expressed its intention to allow this evidence to be presented at trial. Had the trial court granted the motion to supplement the pleadings on the day discovery ended, Synergy makes no claim on appeal that it would have somehow prepared for trial differently through pursuing additional discovery, or by calling additional witness at trial. In other words, Synergy has presented no argument that it was in any way prejudiced by the amended pleadings. Viewed through that lens, it is hard to discern how the trial court's ruling was unjust, and therefore somehow constituted an abuse of discretion. Synergy makes no argument that it was prejudiced by the introduction of this evidence or the supplemental pleading being allowed. Synergy's argument is limited to arguing that, as a matter of law, no evidence of damages may be introduced in a temporary nuisance case after the date of the filing of the petition. We disagree that this is a correct statement of the law and accordingly find no error.

▇▇ We therefore deny Points One and Two.[9]

---

**8.** It is true that *Johnson* and *Thompson* both dealt with the distinct issue of *amended* pleadings as it pertains to Rule 55.33(c), as opposed to the instant issue of supplemental pleadings pursuant to Rule 55.33(d). This Court recognized the distinction in *Spencer v. State*, 334 S.W.3d 559, 574 n. 11 (Mo.App. W.D.2010) ("To the extent Spencer sought to assert new and different claims concerning the Board's December 8, 2009 action, those claims would properly be asserted by way of a *supplemental* pleading under Rule 55.33(d), not an *amended* pleading."). But Synergy fails to cite any authority that holds that this distinction is meaningful within the context of Rule 55.33.

**9.** Finally, we must reject Synergy's argument that this Court is somehow bound to follow the 8th Circuit's holding in *Greger v. International Jensen, Inc.*: "In a nuisance suit for damages alone, damages are limited to the injuries suffered at the time of the filing of the suit. Only when the suit seeks an injunction (equitable relief) as well as damages, are damages allowed to the time of trial." 820 F.2d 937, 940 (8th Cir.1987). The 8th Circuit's holdings regarding Missouri law are not binding on this Court. "Though meriting our respect, decisions of the federal district and intermediate appellate courts and decisions of other state courts are not binding on us." *Doe v. Roman Catholic Diocese of St. Louis*, 311 S.W.3d 818, 823 (Mo.App. E.D.2010); *see also Russell v. Healthmont of Missouri, LLC*, 348 S.W.3d 784, 787 (Mo.App. W.D.2011) (noting that "the 8th Circuit, in *In re Benn*, 491 F.3d 811 (8th Cir.2007), for whatever reason, disregarded this extensive Missouri case law interpreting Section 513.427").

In *Greger*, the Eight Circuit attempted to summarize too broad a swath of Missouri law as it pertained to nuisance lawsuits because in that case, the plaintiffs did not seek to supplement their pleadings pursuant to Rule 55.33(d). Accordingly, *Greger* attempted to answer the instant legal question, when in fact no reported Missouri court had yet to do so under the specific parameters of Rule 55.33(d). For all the reasons set forth above, we respectfully decline to follow *Greger* in this specific regard.

■ In Point Three, Synergy argues that the trial court erred in refusing to give its proffered "instruction 'A' because without further definition of the legal term 'nuisance,' . . . the jury was not properly instructed on the substantive law of nuisance . . . and therefore the verdict directors and other instructions using the term 'nuisance' were confusing and misleading and failed to follow the substantive law."

Synergy offered "instruction A" as a definition of the term "nuisance," which was rejected by the trial court and read as follows:

> The term "nuisance" as used in these instructions means conditions which cause *significant harm*, of a kind that would be suffered by a normal person in the community. *Significant harm* involves more than slight inconvenience or petty annoyance; it must amount to *an invasion that is definitely offensive, seriously annoying, or intolerable.* If normal persons living in the locality would not be substantially annoyed or disturbed, there is no nuisance, even if the personality or temperament of the particular plaintiff may make it unendurable to him or her. (Emphasis added.)

■ "Whether a jury is properly instructed is a matter of law subject to *de novo* review by this court." *Syn, Inc. v. Beebe,* 200 S.W.3d 122, 128 (Mo.App. W.D. 2006) (citing *Boggs, ex rel. Boggs v. Lay,* 164 S.W.3d 4, 20 (Mo.App.W.D.2005)).

MAI 22.06[10] is the applicable instruction as it pertains to a nuisance claim, and it provides the following:

> Your verdict must be for plaintiff if you believe:
>
> First, plaintiff used his property as a residence, and

> Second, (*here describe nuisance such as* "*defendant operated a slaughter house in close proximity to plaintiff's residence*") and

> Third, (*here describe the injury such as* "*ill-smelling odors escaped from defendant's premises onto plaintiff's property and this substantially impaired plaintiff's use of his property,*") and

> Fourth, such use by defendant of defendant's property was unreasonable.

*Id.* (emphasis original).

Here, it is not disputed that the MAI 22.06 does not require that the term "nuisance" be defined in a separate instruction, and in fact does not even require the word "nuisance" to appear in the instruction at all. Notwithstanding this fact, Synergy contends that the trial court erred in not further defining the term "nuisance" in the verdict directors given in this case (which were patterned after MAI 22.06) because "the jury had no guidance as to the meaning of nuisance," which left the given instructions "confusing and misleading and failed to follow the substantive law." We disagree.

In this case the verdict directors given on each claim were substantially identical and set forth as follows

> On the claim of plaintiff [name of plaintiff] against defendant [name of defendant] for *nuisance* as to the [farm in question], your verdict must be for plaintiff if you believe:
>
> First, plaintiff used his property as a residence or farm, and
>
> Second, defendant [name of defendant] utilized the [farm in question] to raise its hogs in close proximity to plaintiff [name of plaintiff]'s property, and
>
> Third, ill-smelling odors, other emissions, or flies escaped from the hog nursery onto plaintiff's property and this

---

10. Missouri Approved Jury Instructions, Seventh Edition (2012).

substantially impaired plaintiff's use and enjoyment of his property, and

Fourth, such use by defendant Synergy, LLC of the property was unreasonable. (Emphasis added.)

The use of the term "nuisance" in the verdict directors in question was used in the opening paragraph to alert the jury as to the type of claim addressed in the particular instruction, but the instruction did not require that the jury make any findings in regard to the term "nuisance" as used in the instruction. The verdict director set forth what the jury was required to find or believe in the numbered paragraphs below this opening paragraph. Synergy does not claim that the proper elements of the temporary nuisance claim were not properly set out in the numbered paragraphs in the verdict director or that all necessary elements of the claim were not required to be found by the jury in order to return a verdict. MAI 2.00.F, specifically requires in cases where a package of instructions is used with multiple parties or multiple claims, that "identifying phrases" should be used to clarify the various claims. The MAI informs counsel and trial courts that the "identifying phrases" should be "non-inflammatory and as neutral as possible and should avoid the assumption of disputed facts." In this case, the verdict directors that were given by the trial court used the term "nuisance" as an identifying phrase and we find no error in its use in this fashion. Synergy makes no argument that this phrase was inflammatory, assumed disputed facts or failed to be as neutral as possible.

Further, even if the trial court had been required to give a definition of the term "nuisance" in this case, the next issue is whether or not Synergy's proffered instruction was the proper definition. In *Rice v. Bol*, 116 S.W.3d 599, 609 (Mo.App. W.D.2003), this Court outlined the follow-ing law as it pertained to the trial court's duty to further define terms in MAI instructions:

"Even if not mandated by MAI, however, a trial court must define for the jury legal or technical terms occurring in the instructions, for their meaning is not within the ken of the ordinary juror." *Brock v. Firemens Fund of Am. Ins. Co.*, 637 S.W.2d 824, 827 (Mo.App.1982). And, while the trial court must define legal or technical terms, it need not define non-technical, readily understood words or commonly used words. *MFA Inc.*, 817 S.W.2d at 664. With respect to defining terms not mandated by MAI, the MAI provides:

If you use a term not having an MAI definition which you believe should be defined, prepare a definition and tender it to the trial judge. Whether the judge gives a definition instruction which is not mandatory is largely discretionary. Giving a definition of an MAI instruction term obtained from an approved instruction is a modification of the instruction and is subject to all of the standards of modification.

*Id.*

Synergy's argument in this Point Relied On is predicated on its assumption that the trial court and this Court are required to follow the definition of "nuisance" contained in *Sofka v. Thal,* 662 S.W.2d 502, 508 (Mo. banc 1983). But Synergy's argument ignores the fact that the trial court and this Court are "constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court." *Custer v. Hartford Ins. Co.,* 174 S.W.3d 602, 609 (Mo.App. W.D.2005) (quoting *Kinder v. Missouri Dep't of Corrections,* 43 S.W.3d 369, 374 (Mo.App. W.D.2001) (citing Mo. Const. art. V, § 2)).

Synergy urges us to follow the precedent from nearly thirty years ago, where

the Missouri Supreme Court defined nuisance to be:

> Private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. Restatement (Second) of Torts § 821D (1977). However, the law does not concern itself with trifles, and there is liability for nuisance only to those whom it causes *significant harm,* of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose. Restatement (Second) of Torts § 821F (1977). By significant harm is meant harm of importance, involving more than slight inconvenience or petty annoyance, Restatement (Second) of Torts § 821F comment c (1977), determined by the standard of normal persons or property in the particular locality. Restatement (Second) of Torts § 821F comment d (1977). If normal persons living in the community would regard the invasion as *definitely offensive, seriously annoying or intolerable,* it is significant. *Id.*

*Sofka,* 662 S.W.2d at 508 (emphasis added).

However, much more recently, the Missouri Supreme Court defined "nuisance" as follows:

> "Nuisance is the *unreasonable, unusual, or unnatural* use of one's property so that it *substantially impairs the right of another to peacefully enjoy his property.*" *Frank v. Environmental Sanitation Mgt., Inc.,* 687 S.W.2d 876, 880 (Mo. banc 1985). "The law of nuisance recognizes two conflicting rights: property owners have a right to control their land and use it to benefit their best interests; the public and neighboring land owners have a right to prevent *unreasonable use that substantially impairs the peaceful use and enjoyment of other land.*" *Id.*

Weber claims that common issues cannot predominate where, as here, plaintiffs sue for a private nuisance, because the proof necessary to present each plaintiffs claim will necessarily vary in light of the elements that must be proved to submit a private nuisance claim to the jury.

\* \* \*

Weber asserts that [MAI 22.06] will require individual proof that each plaintiff used its property as a residence and that the effects of the blasting were felt on and substantially impaired the use of each plaintiffs property to the extent that it made the blasting unreasonable as to that specific plaintiff.

Here, the trial court found two issues common to all members of the class that predominate over other issues: (1) whether Weber's use of his land for blasting was *unreasonable* and (2) whether the blasting activity *substantially impaired plaintiffs' use and enjoyment of their property.*

This Court agrees that upon a proper showing and class definition, such issues could be found to predominate in a claim based on nuisance. The jury can make a determination as to whether and when defendant began the blasting or level of blasting that is alleged to be a nuisance and whether that blasting was *unreasonable* as to persons within the class. It may determine that it was *reasonable or unreasonable* as to all members of the plaintiff class; it may determine that the use of the property was *reasonable* as to those who felt vibrations of a certain magnitude, but was *unreasonable* as to those who felt vibrations of a greater magnitude. The *common question of the reasonableness of the blasting would pervade every class member's claim.*

*Green v. Fred Weber, Inc.*, 254 S.W.3d 874, 880–81 (Mo. banc 2008) (emphasis added).

The problem with Synergy's argument is that the verdict directing instructions, as submitted to the jury in the instant case and as patterned after MAI 22.06, accurately reflect the Missouri Supreme Court's most recent definition of the term nuisance in *Green*. Specifically, *Green* outlined two distinct components in defining the term "nuisance": (1) whether use of the land was "unreasonable," and (2) whether the defendant's use of the property "substantially impaired plaintiffs' use and enjoyment of their property." *Id.* Indeed, it is not surprising then that MAI 22.06 (and each of the verdict directors in question on appeal) therefore contained *this precise language in third and fourth numbered paragraphs of the verdict directing instructions.*

For this precise reason, we must reject Synergy's contention that the term "nuisance" needed to be further defined. To the contrary, it is Synergy's proposed "instruction A" that does not track and reflect current Missouri law on this issue.

The problem with "instruction A" is that instead of using the terms "unreasonable" and "substantially impaired plaintiffs' use and enjoyment of their property" as required by the Missouri Supreme Court's most recent holding regarding the definition of "nuisance" in *Green*, "instruction A" instead relies on a "significant harm" test. Synergy argues that this "significant harm" test is the proper definition of "nuisance" because it "is derived from the Missouri Supreme Court case of *Sofka* . . . [that] has not been overturned." However, as we previously stated, "[t]his court is constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court," and thus we conclude the trial court did not err in rejecting Synergy's proposed definitional instruction. *Custer*, 174 S.W.3d at 609.[11]

■■■ Even if the trial court were required to give a definition of "nuisance" under the instructions given, it was not error to refuse to give a proffered instruction that fails to follow current Missouri law. In order to give a not-in-MAI instruction, the instruction must follow the current substantive law. See *Kauzlarich v. Santa Fe Ry. Co.*, 910 S.W.2d 254, 260 (Mo. banc 1995).

Point Three is denied.

■■■ In Point Four, Synergy argues that the trial court erred "by submitting non-MAI instruction Nos. 22, 24, 37 and 39 (the "utilization" verdict directors) to the jury because they misstated the law and misstated the requisite elements for a finding of nuisance in that Synergy's liability, if any, for the nursery operations of Wayne Nichols or Marcel Fischbacher de-

11. In 1983, *Sofka* expressly relied on Restatement (Second) of Torts Section 821F to announce the "significant harm test." 662 S.W.2d at 508. No other reported Missouri Supreme Court case, before or after, has applied the "significant harm test" of Section 821F. Section 821 of the Restatement is contained in the Chapter entitled "Types of Nuisances." Less than two years later, in *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 879–80 (Mo. banc 1985), the Missouri Supreme Court adopted the current "unreasonable" test applied recently in *Green*. In doing so, the Court relied on Section 822 of the Restatement, which pertains specifically to "Private Nuisance." While the *Frank* court did not mention *Sofka* in its analysis, it clearly gave a distinct and different definition to the term "nuisance." Indeed, the Court in *Frank* even went so far, on an issue not related to the instant appeal, to "hold [that] the Restatement does not accurately reflect Missouri's nuisance law." *Id.* at 880. Ultimately, there can be no dispute as to what the Court's most recent definition of the term "nuisance" is in the context of the tort of private nuisance.

pended on Synergy's control of those nursery operations not mere utilization of those operations." We disagree.

Here, the four complained of instructions were identical in that they all submitted liability against Synergy on the basis that it caused a nuisance by utilizing a farm owned by another party. For example, Instruction Number 22 stated the following:

> On the claim of plaintiff Darvin Bentlage against defendant Synergy, LLC for nuisance as to the Nichols nursery, your verdict must be for plaintiff if you believe:
>
> First, plaintiff used his property as a residence or farm, and
>
> Second, defendant Synergy, LLC utilized the Nichols nursery to raise its hogs in close proximity to plaintiff Darvin Bentlage's property, and
>
> Third, ill-smelling odors, other emissions, or flies escaped from the hog nursery onto plaintiff's property and this substantially impaired plaintiff's use and enjoyment of his property, and
>
> Fourth, such use by defendant Synergy, LLC of the property was unreasonable.

LF 164.[12]

On appeal, Synergy argues that these " 'utilization' verdict directors were modifications of MAI 22.06." We disagree.

> For ease of analysis, the text of MAI 22.06 is repeated below:
>
> Your verdict must be for plaintiff if you believe:
>
> First, plaintiff used his property as a residence, and
>
> Second, (here describe nuisance such as "defendant operated a slaughter house

in close proximity to plaintiff's residence") and

> Third, (here describe the injury such as "ill-smelling odors escaped from defendant's premises onto plaintiff's property and this substantially impaired plaintiff's use of his property," and
>
> Fourth, such use by defendant of his property was unreasonable.

*Id.*

Synergy argues the instruction was "modified" because of the language used to describe the nuisance, as required by MAI 22.06 in the second prong of the instruction. But the italicized language in the second prong of MAI 22.06 is merely language to assist the trial court in instructing the jury based on the facts established by the evidence at trial. Indeed, MAI 22.06, in prong two, *requires* the trial court to *"here describe nuisance **such as** ..."* *Id.* (emphasis added).

Indeed, we have held that the trial court's failure to include the *precise descriptive information* as required by the MAI instruction is instructional error that can rise to the level of requiring plain error relief. *See City of Columbia v. Hardin*, 963 S.W.2d 6, 9–10 (Mo.App. W.D. 1998) ("Here, the submitted instruction [MAI 330.14] used the phrase "physical interference." Where it was required to include a description of that interference, it should have explicitly described Ms. Hardin's conduct, such as stating that she put her arms around Dante and held onto him while police were attempting to take him into custody. Instead, the instruction simply said that Ms. Hardin "attempted to prevent Dante Hardin from being taken into custody by police officers.")

---

**12.** Instruction Number 24 submitted an identical instruction on behalf of plaintiff David Bentlage as it pertained to the "Fischbacher nursery." Furthermore, instructions 37 and 39 were identical to instructions 22 and 24, but the named plaintiff in those instructions was Patricia Bentlage.

Not every nuisance claim is based on the theory that the *"defendant operated a slaughter house in close proximity to plaintiff's residence"* because there can be no dispute that there are many other ways a defendant can be liable in a private nuisance claim. It would make no sense that each and every time that the trial court did not use the identical, hypothetical descriptive language of MAI 22.06 in order to track the evidence presented at trial, the law would consider the instruction a "modification" of an MAI approved instruction. Therefore, we must reject Synergy's contention that the verdict directing instructions in question were not approved MAI instructions based on 22.06.[13]

■ Finally, we must also reject the notion that these instructions somehow "misstated the law." "Property ownership is not a prerequisite to nuisance liability." *City of Greenwood v. Martin Marietta Materials, Inc.*, 299 S.W.3d 606, 617 (Mo. App. W.D.2009) (quoting *Rosenfeld v. Thoele*, 28 S.W.3d 446, 452 (Mo.App. E.D. 2000) (quoting 58 Am.Jur.2d *Nuisances* § 117 (1989)). "Indeed, 'one who creates a nuisance *whether on his property or not*, is liable for the damage caused thereby.'" *Id.* (emphasis original).

On appeal, Synergy does not dispute the above case law did not require Synergy to own the land in question in order to be liable under the nuisance theory. Instead,

Synergy argues that "in nuisance, the primary focus is on whether the defendants **controlled** the instrumentality of the nuisance" and that the jury was "allowed to find liability against Synergy on less than a finding that Synergy **controlled** the nurseries of Wayne Nichols or Marcel Fischbacher. Mere 'utilization' of facilities is not enough to impose liability on Synergy for those operations." Br, pg. 48–9 (emphasis original).

■ But this argument was not the argument advanced before the trial court at the instructions conference *or* in the motion for new trial. Here, counsel for Synergy never complained before the trial court that the proper language in the instruction should have been "controlled" as opposed to "utilized." Rather, Synergy argued the following at the instructions conference as it pertains to the "utilized" verbiage in the instruction:

Your Honor, with respect to those instructions that used that premise upon which to base nuisance, it's the contention of the Defendants that this is a misstatement of the law of nuisance. Utilization by Synergy of that facility is disconnected from the objective nuisance. And that is that the property itself was, *and the person who occupied that property would be the one liable for a nuisance, not the person, like Synergy, who was in a position of putting its*

---

13. Alternatively, assuming that the instructions, as submitted were in fact "modified," we conclude that the trial court did not err in so modifying MAI 22.06 in this regard. *Trident Group, LLC v. Mississippi Valley Roofing, Inc.*, 279 S.W.3d 192, 199 (Mo.App. E.D. 2009) ("Rule 70.02(b) requires that modifications to approved jury instructions be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Under Rule 70.02(c), we will reverse a trial court's decision to submit a jury instruction only if

the offending instruction misdirected, misled, or confused the jury, resulting in prejudicial error. A review of the modified instructions reveals that they complied with Rule 70.02(b): they were simple, brief, impartial, free from argument, and did not submit to the jury or require findings of detailed evidentiary facts."); *see also Richey v. Philipp*, 259 S.W.3d 1, 16 (Mo.App. W.D.2008) ("[Modifications of MAIs as required by the facts of a particular case are not presumptively prejudicial merely because the MAI is not literally followed.").

*hogs into the nursery for development.* And as a consequence, Instructions 22, 24, 37 and 39, all of which suffer from the same infirmity should be rejected by the Court.

Tr. 2446–7 (emphasis added).

This Court recently outlined the following applicable law in *Edwards v. Gerstein*:

"Proper preservation of error requires that objections be made at the instruction conference and renewed in a motion for new trial." *Syn, Inc.*, 200 S.W.3d at 135. As noted in Rule 70.03, objections must be specific; general objections are not sufficient to preserve error. " 'The rationale behind making objections is to avert error and allow the trial court to make an intelligent ruling.' " *Gill Constr., Inc. v. 18th & Vine Auth.*, 157 S.W.3d 699, 718 (Mo.App.2004) (quoting *Gamble v. Bost*, 901 S.W.2d 182, 188 (Mo.App.1995)). " 'Further, a point of appeal must be based on a theory voiced in the objection at trial and a defendant cannot expand or change on appeal the objection as made.' " *Id.* (quoting *Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 387 (Mo.App.2000)).

363 S.W.3d 155, 167 (Mo.App. W.D.2012).

 The fact that Synergy did not articulate the arguments it raises on appeal before the trial court is problematic because it precluded the trial court from simply substituting the language pursuant to a specific request. "Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal." *Goralnik v. United Fire and Cas. Co.*, 240 S.W.3d 203, 210 (Mo.App. E.D.2007) (internal citations and quotations omitted). "Errors not preserved on appeal may be reviewed for plain error at the appellate court's discretion, however appellate courts seldom grant plain error review in

civil cases." *Id.* Like in *Goralnik*, "[w]e decline to do so here." *Id.*

 Even were we to grant such review *ex gratia*, no relief would be warranted. Simply put, we do not believe that a manifest injustice ensued because the term "utilized" as opposed to "controlled" was used in the instructions. "We will decline to exercise our discretion to review a claim of plain error unless the claim facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Environmental Waste Management, Inc. v. Industrial Excavating & Equipment, Inc.*, 981 S.W.2d 607, 616 (Mo.App. W.D. 1998). Here, evidence was presented at trial that Synergy "controlled" *and* "utilized" the land in question in their CAFO. We need not attempt to recount what precisely this evidence was because it is beyond the scope of this opinion. Suffice it to say, the jury was free to believe the evidence at trial that Synergy entered into a contract where it oversaw the minute details of the day to day CAFO operations, including administering how the swine's waste and dead carcasses were to be disposed. Accordingly, we do not believe a manifest injustice resulted from the trial court including the term "utilized" instead of "controlled" in the instructions in question because the evidence overwhelmingly supported the conclusion that Synergy in fact both "utilized" and "controlled" the swine growing operations.

For all of the above reasons, Point Four is denied.

 In Point Five, Synergy argues that the trial court erred "by submitting instruction Nos. 23, 25, 38, and 40 (the "Agency" verdict directors) to the jury because they were outside the scope of the pleadings and not supported by substantial evidence in that: (1) respondents failed to allege in their Petition, whether initial or

amended, that Wayne Nichols or Marcel Fischbacher were agents of or acted within the scope and course of the agency for Synergy; and (2) there was no evidence of the elements of the principal/agent relationship, specifically, the right to control; existence of a fiduciary relationship; or the power to alter Synergy's legal relationships with third parties."

█ "Whether a jury was properly instructed is a question of law that this Court reviews *de novo.*" *Bach v. Winfield–Foley Fire Protection Dist.,* 257 S.W.3d 605, 608 (Mo. banc 2008) (citing *Harvey v. Washington,* 95 S.W.3d 93, 97 (Mo. banc 2003)). "Review is conducted in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper." *Id.* (citing *Oldaker v. Peters,* 817 S.W.2d 245, 251–52 (Mo. banc 1991). "Instructional errors are reversed only if the error resulted in *prejudice that materially affects the merits of the action.*" *Id.* (emphasis added); *see also Stanton v. Hart,* 356 S.W.3d 330, 334 (Mo.App. W.D. 2011) ("Reversal for instructional error is appropriate when the instruction misdirected, misled, or confused the jury *and resulted in prejudice.*" Rule 84.13(b) prohibits reversal of any judgment unless the circuit court *committed error that materially affected the merits of the action.*") (emphasis added).

On appeal, Synergy *does not even attempt* to allege, let alone explain, how the complained of instructional error was somehow prejudicial. Instead, Synergy merely argues the following:

It was error for the court to submit Synergy's liability for nuisance on the premise that Wayne Nichols and Marcel Fischbacher were its agents. The verdicts rendered against Synergy based

upon "Agency" verdict directors should be set aside.

Br, pg. 54.

But the law is clear on appeal: Synergy must demonstrate more than that the trial court merely erred; it must demonstrate that the trial court committed error that "materially affected the merits of the action." *Id.* Synergy's failure to make such an argument on appeal is dispositive of this Point Relied On because this Court must "ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *City of Lee's Summit v. Cook,* 337 S.W.3d 757, 758 (Mo.App. W.D.2011); *see also Kline v. City of Kansas City,* 334 S.W.3d 632, 640, n. 3 (Mo.App. W.D.2011) ("We take issue with the notion that because Kline could not be bothered to set forth the requisite analysis to demonstrate that any one of these alternative instances was grounds for reversal, that this Court should wade through this list on its own to do the analysis for Kline. Indeed, our rules prohibit us from doing so.").

Finally, we must also take issue with Synergy's argument that "respondents failed to allege in their Petition, whether initial or amended, that Wayne Nichols or Marcel Fischbacher were agents of or acted within the scope and course of the agency for Synergy." To the contrary, Plaintiff's Petition alleged that "Fischbacher, along with Wayne Nichols own the land and the structures that comprise the hog facilities in question in this suit, or, are purchasing the land and structures, either as individuals or through an ownership interest in Kenoma, LLC, or, *manage the hog operations on behalf of Synergy.*" While Plaintiffs may not have used the precise legal term "agent" in setting forth this theory in their Petition, we believe this theory was fairly set forth in the Petition and at trial.

For all of these reasons, Point Five is denied.[14]

In Point Six, Synergy argues that the "trial court committed plain error in receiving and then entering judgment upon verdicts for Darvin and Patricia Bentlage against Synergy respecting the Fischbacher nursery because the verdicts awarded redundant damages—a double recovery—in that the jury twice awarded damages to the Bentlages for the same claim of nuisance." We agree.

Here, it is not disputed by Synergy that it did not properly preserve this claim for our review by timely making an objection pertaining to the verdict. As previously mentioned, it is within this Court's discretion to review for plain error. *See* Rule 84.13(c). In deciding whether to exercise our discretion to conduct plain error review, we determine whether the trial court "committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *In re J.L.B.*, 280 S.W.3d 147, 155 (Mo.App. S.D. 2009). "We will reverse for plain error in civil cases only in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *Atkinson v. Corson*, 289 S.W.3d 269, 276–77 (Mo.App. W.D.2009).

■ Accordingly, in determining whether to exercise our discretion to provide plain error review, we look "to determine whether there facially appears substantial grounds for believing that the trial court committed error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice." *Cohen v. Express Fin. Servs., Inc.*, 145 S.W.3d 857, 864 (Mo.App. W.D.2004).

> If in applying this standard the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine whether the trial court actually committed evident, obvious and clear error that affected substantial rights. However, as in the case of regular appellate review, not every obvious, evident and clear error found in plain error review requires reversal. In the case of regular review, to be reversible, the error found must have prejudiced the appellant. Likewise, in the case of plain error review, the error must have prejudiced the appellant, except that such prejudice must constitute manifest injustice or a miscarriage of justice. Thus, in the second step of reviewing for plain error, the court must determine whether the evident, obvious, and clear error found resulted in manifest injustice or a miscarriage of justice.

*Hogan v. Board of Police Com'rs of Kansas City*, 337 S.W.3d 124, 133 (Mo.App. W.D.2011) (citation and quotation omitted).

---

**14.** To be clear, we decline to wade into this prejudice analysis because for this Court to do so would be to act as an advocate on behalf of Synergy.

It is worth noting that on appeal Synergy complains of instructional error as it pertains to *four* instructions. But as it pertains to two of the instructions (Instructions 23 and 38), there can be no doubt that Synergy cannot demonstrate prejudicial error because the jury *entered a verdict in Synergy's favor as it pertains to these two instructions.*

As it pertains to Instructions 25 and 40, (wherein the jury entered an award against Synergy), we are left to speculate by Synergy as to whether the inclusion of the term "agency" in these specific instructions somehow constituted prejudicial error. But, for the reasons discussed above, this Court is precluded from speculating as to what Synergy believes was prejudicial, and if so *why* specifically it believes it was prejudicial.

■ Here, there is no dispute that the jury awarded two separate $75,000 nuisance verdicts to Patricia Bentlage: the first $75,000 nuisance verdict was based on Synergy's direct liability in utilizing the Fischbacher nursery; the second $75,000 nuisance verdict was based on Synergy's liability for the Fischbacher nursery because it was "operating a hog nursery within the scope and course of [their] agency for Synergy." In an identical fashion, the jury also awarded two separate $75,000 nuisance verdicts to Darvin Bentlage: the first $75,000 nuisance verdict was based on Synergy's direct liability in utilizing the Fischbacher nursery; the second $75,000 nuisance verdict was based on Synergy's liability for the Fischbacher nursery because it was "operating a hog nursery within the scope and course of [their] agency for Synergy."

Again, it is not disputed that Synergy did not object to the jury's award in this specific regard until after the jury was discharged, and therefore we may review these claims for plain error only.

■ "[A] party is 'not entitled to be made more than whole or receive more than one full recovery for the same harm.'" *Martha's Hands, LLC v. Starrs*, 208 S.W.3d 309, 316 (Mo.App. E.D.2006) (quoting *Davis v. Cleary Building Corp.*, 143 S.W.3d 659, 670 (Mo.App. W.D.2004)). "Thus, if the damages for two causes of action 'are the same, then the damage award merges.'" *Id.*; *Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo.App. W.D.1991) ("A single transaction may invade more than one right, and the person injured may sue on more than one theory of recovery. The plaintiff, however, may not be made more than whole or receive more than one full recovery for the same harm.").

Plaintiffs contend that this award did not constitute a double recovery in light of the fact that "[i]t has long been the law in Missouri that where a party commits two separate wrongs, damages can be awarded for each," and "[h]ere the jury found for plaintiffs on both the agency theory and the utilization theory." But plaintiffs ignore that both of these theories were grounded in the same claim of nuisance on the same property against the same defendant, and plaintiffs cite no case or statute to support its contention that these two agency/utilization theories of nuisance somehow allowed a separate recovery for the same wrong of nuisance. Whether by agency or utilization, the damage to the Bentlage's property by the nuisance of the operation of the CAFO was the same damage. The damage to the property did not increase, decrease or change depending upon which theory the jury found liability.

■ Plaintiffs were "entitled to be made whole by one compensatory damage award, but not to the windfall of a double recovery." *Kincaid Enterprises, Inc.*, 812 S.W.2d at 900. "A double recovery is a species of unjust enrichment and is governed by the same principles of preventive justice." *Id.* "Thus, instructions that allow a jury to return damages that overlap or duplicate are error." *Id.* at 901 (citing *Clayton Brokerage Co. of St. Louis v. Pilla*, 632 S.W.2d 300, 306 (Mo.App. E.D. 1982)).

Indeed, Missouri law is clear that this type of double recovery constitutes plain error, which constitutes a manifest injustice. "It was error for the trial court to enable the jury to return verdicts for redundant damages. It was plain error for the trial court then to receive the verdicts." *Kincaid Enterprises, Inc.*, 812 S.W.2d at 901; *see also Senu–Oke v. Modern Moving Systems, Inc.*, 978 S.W.2d 426, 432 (Mo.App. E.D.1998) ("While plaintiff's submission for conversion is not inconsistent with his submission for breach of con-

tract, he may not recover damages in excess of his actual injury. Therefore, the trial court's error in entering the two judgments constitutes manifest injustice.").

Here, plaintiffs do not even attempt to address this specific line of cases, holding that the trial court's allowance of a double recovery constitutes plain error, regardless of Synergy's failure to object. Based on the doctrine of *stare decisis*, we believe that this Court is compelled to reverse the trial court's judgment as it pertains to this double verdict. While proper packaging of the jury instructions could have prevented this error and Synergy should have offered appropriate instructions to avoid such a result, caselaw is clear that such a double recovery cannot stand.

■ Plaintiffs further argue that the doctrine of the election of remedies applies to the instant matter, but we disagree. "The principle of election of remedies has a narrow application." *Clayton Brokerage Co. of St. Louis, Inc. v. Pilla*, 632 S.W.2d 300, 305 (Mo.App. E.D.1982). "Election of remedies must be pleaded or be raised [by the defendant] by a motion to strike or by a motion to elect at the close of all the evidence" and "[i]f it is not so raised, the objection is deemed waived." *Citizens Bank of Appleton City v. Schapeler*, 869 S.W.2d 120, 125 (Mo.App. W.D.1993).

■ The election of remedies doctrine applies "where a party has the right to pursue one of two *inconsistent* remedies and makes an election, institutes suit, and prosecutes it to final judgment, that party cannot thereafter pursue another and inconsistent remedy." *Scott v. Blue Springs Ford Sales, Inc.*, 176 S.W.3d 140, 142 (Mo. banc 2005) (emphasis added). "The doc-

trine is only applicable when a party has more than one remedy to correct a single wrong and the remedies are *inconsistent*." *Tolbert v. Automotive Finance Corp.*, 341 S.W.3d 195, 200 (Mo.App. W.D.2011) (emphasis added). "To determine whether remedies are inconsistent, we look at whether one theory alleges what the other denies or whether one theory is repugnant to another." *Id.* (citation and quotation omitted). "If the remedies are concurrent and consistent, or cumulative, the doctrine of election of remedies does not apply." *Id.*

■ Based on the above holdings, we conclude that the election of remedies doctrine is inapplicable to the instant case. This is because the alternate theories of nuisance recovery pursued by these plaintiffs were not "inconsistent" in that both the "agency" and the "utilization" theory rested on the same core of consistent facts that Synergy was the driving force behind the nuisance caused by the Fischbacher nursery. Simply put, because Synergy has failed to demonstrate how Plaintiffs nuisance theories were "repugnant to one another," we conclude that the election of remedies doctrine is inapplicable. *Id.*

■ However, because we conclude that a manifest injustice resulted in that Patricia Bentlage *and* Darvin Bentlage both received double recoveries on their duplicative nuisance claims against Synergy, this Court must take the corrective action of ordering that only one $75,000 nuisance judgment stand in each of their individual favor against Synergy; the second such judgment is hereby reversed and struck down pursuant to our authority under Rule 84.14.[15] Rule 84.14 provides that

15. We assume that plaintiffs have no preference which of their $75,000 nuisance claim theories they wish to collect upon. Accordingly, for the sake of clarity, this Court rules

that both Patricia and Darvin Bentlage's "utilization" nuisance awards for $75,000 will stand on appeal. Therefore, this Court reverses and strikes down both "agency" nui-

"[t]he appellate court shall award a new trial or partial new trial, reverse, or affirm the judgment or order of the trial court, in whole or in part, or *give such judgment as the court ought to give.* Unless justice otherwise requires, the court shall dispose finally of the case." Rule 84.14 (emphasis added). "An appellate court may give judgment as the circuit court ought to have given, but only in circumstances that indicate there is no further need for proceedings in the circuit court." *DeBaliviere Place Ass'n v. Veal,* 337 S.W.3d 670, 679 (Mo. banc 2011). Here, our holding today does not require a remand for further proceedings below.

Point Six is granted.

In Point Seven, Synergy argues that the trial court erred "in denying Synergy's motion to amend requesting that the verdicts entered against Synergy and in favor of Plaintiffs Bentlage be reduced by the amount of the settlement agreements reached with former defendants Nichols and Fischbacher because Synergy met its burden of showing that it is entitled to a reduction under Section 537.060 in that Wayne Nichols and Marcel Fischbacher are, by operation of the verdicts rendered, jointly liable with Synergy for the injury purportedly suffered by Plaintiffs Bentlage as a result of the alleged nuisance."

The parties do not dispute that the proper standard of review for this specific issue is *de novo. Gibson v. City of St. Louis,* 349 S.W.3d 460, 465 (Mo.App. E.D.2011).

Section 537.060 [16] is the relevant statute that is used to determine whether Synergy is entitled to a reduction of the judgment for the settlements as a matter of law, which provides, in relevant part, the following:

Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the *same injury* or wrongful death, such agreement shall not discharge any of the other tortfeasors for the damage unless the terms of the agreement so provide; *however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater*

*Id.* (emphasis added).

Recently, the Eastern District summarized the applicable law that guides our disposition of the instant issue:

Section 537.060 implements the common law rule that a plaintiff is entitled to one satisfaction for a wrong. *Walihan v. St. Louis–Clayton Orthopedic Grp., Inc.,* 849 S.W.2d 177, 180 (Mo.App. 1993). Under common law, when a "judgment for a wrong is rendered against one who is a joint tortfeasor, and the judgment is satisfied, the plaintiff cannot recover another satisfaction for the same wrong." *Beare v. Yarbrough,* 941 S.W.2d 552, 555 (Mo.App.1997). "The term joint tortfeasor' includes a single indivisible harm caused by independent, separate, but concurring wrongful acts of two or more persons." *Id.* (citing *Brickner v. Normandy Osteopathic Hosp., Inc.,* 687 S.W.2d 910, 912

sance awards in favor of Patricia Bentlage (Verdict D–6) and Darvin Bentlage (Verdict C–6) in the amount of $75,000 each.

16. All statutory citations are to RSMo 2000 as updated through the 2011 Cumulative Supplement, unless otherwise indicated.

(Mo.App.1985)). "An indivisible injury results when two or more causes combine to produce an injury incapable of division on any reasonable basis and each is a substantial factor in bringing about the harm." *Beare*, 941 S.W.2d at 555 (citing *McDowell v. Kawasaki Motors Corp. USA*, 799 S.W.2d 854, 861–62 (Mo.App.1990)).

Section 537.060, by its own terms, requires that "two or more persons [be] liable in tort for the same injury" before any reduction can be applied. " 'Same injury' as that term is employed in section 537.060 . . . [turns] on whether the plaintiffs injury was, in fact, caused by a single transaction of facts as to render the injury indivisible and subject to joint liability among multiple tortfeasors." *Stevenson*, 326 S.W.3d at 926–27. A "same injury" can occur "in the rare case when technically 'independent' torts occur under [unique] circumstances[,] making it impossible to differentiate which injuries were caused by which defendant, [and] rendering the tortfeasors joint and the injuries 'indivisible.' " *Id.* at 925. Therefore, two independent torts may result in the "same injury" when it is impossible to definitely attribute a specific injury to each incident, resulting in an "indivisible injury." *Id. Gibson v. City of St. Louis*, 349 S.W.3d 460, 465–66 (Mo.App. E.D.2011).

On appeal, plaintiffs do not dispute that the predicate substantive requirements pursuant to Section 537.060 were met by Synergy in seeking the reduction of the judgment based on the settlements before the trial court in its Motion to Amend Judgment. Instead, plaintiffs argue that the trial court was justified in denying Synergy's motion to amend the judgment based on how the reduction evidence was procedurally presented before the trial court.

■ Specifically, plaintiffs argue that Synergy's reduction based on settlement "claim fails for never having been properly pleaded." "[A] reduction under section 537.060 must be affirmatively pleaded." *Norman v. Wright*, 100 S.W.3d 783, 785 (Mo. banc 2003). "Satisfaction is an affirmative defense," and "[affirmative defenses must be pleaded and proved." *Id.*

■ Here, it is not disputed that Synergy pled this affirmative defense in its Answer, answering plaintiffs' Third Amended Petition as follows:

> Defendant states that to the extent Plaintiffs have been compensated for any of their alleged damages, or will be compensated in the future, or receive payments from any other parties or entities, that said compensation should be set off against any other recovery Plaintiffs may receive in this action, all pursuant to [Section] 537.060.

Notwithstanding that Synergy raised this affirmative defense in its Answer, Plaintiffs contended that this defense was "improperly pleaded" because "[t]heir affirmative defense states a legal conclusion, not a set of facts from which that legal conclusion can be drawn" because "[i]t does not set out the terms of the settlements it seeks to invoke." However, under the facts of this case, Synergy could not have set out the specific "facts" of the Plaintiffs' settlement in its Answer because the settlement did not take place until the time of trial, and accordingly it is undisputed that the settlement took place well after Synergy filed its Answer and too late to amend its answer. The record shows that the settlements in question occurred during the trial and while Synergy had some knowledge that the settlement had occurred, the documentation of the amount and terms of the settlements were not provided by the Plaintiffs to Synergy until

after the case was submitted to the jury and the jury returned its verdict. Simply put, we conclude that Synergy properly set forth this affirmative defense in its Answer, as it included all facts in its possession at the time the answer was filed and the settlement occurred too late in the process to make a request to amend the answer of any practical effect. Further, Plaintiffs cannot argue that the facts necessary to support the affirmative defense were unknown to them, as they are the ones who entered into the settlement with the other joint tortfeasors. The facts and terms of the settlements were more fully available to the Plaintiffs than they were to Synergy.

Plaintiffs fail to cite any persuasive case law that supports their proposition that this reduction issue was not properly raised before the trial court. While plaintiffs analogize the instant matter to our holding in *Echols v. City of Riverside*, that case is easily distinguishable from the instant matter because in *Echols* "the City failed to plead an affirmative defense of credit or offset."[17] 332 S.W.3d 207, 211 (Mo.App. W.D.2010). Here, as explained above, the defense was clearly raised by Synergy in its Answer.

It is true that we held in *Echols* that "[a] pleading that makes a conclusory state-ment and does not plead the specific facts required to support the affirmative defense fails to adequately raise the alleged affirmative defense, and the alleged affirmative defense fails as a matter of law." *Id.* at 211. Here, Plaintiffs cite no caselaw to support the conclusion that Synergy was somehow required to plead specific facts in its Answer regarding a settlement that had not yet occurred because to have done so would have been impossible.[18]

Plaintiffs also argue that "set off [reduction] is never properly raised after verdict," but fail to cite any authority that actually so holds. Again, plaintiffs cite an easily distinguishable case from the instant matter, wherein the Missouri Supreme Court reversed the trial court after defendant was granted a reduction notwithstanding the fact that the defendant failed to set forth the affirmative defense in his answer. *Norman v. Wright*, 100 S.W.3d 783, 785–86 (Mo. banc 2003) ("Here, the issue of reduction under section 537.060 was *not* raised by the pleadings ... Pleadings present, define, and isolate the issues, so that the trial court and all parties have notice of the issues ... The trial court should not have reduced the judgment, because Dr. Wright failed to plead and prove the affirmative defense of reduction under section 537.060.").[19]

---

17. Our Supreme Court has recently noted that this affirmative defense is occasionally and incorrectly referred to as "setoff" while the proper term is "reduction." *Sanders v. Ahmed, M.D.*, 364 S.W.3d 195, n. 2 (Mo. banc 2012).

18. Had the settlements in question already occurred and was known to Synergy when Synergy set forth its affirmative defense in its Answer, Plaintiffs would have a meritorious point; but a party cannot be expected to divine future events that have yet to occur in order to properly raise affirmative defenses. Even if the settlement had occurred prior to trial and Synergy was aware thereof but

failed to amend their answer accordingly, Plaintiffs argument may be more persuasive.

19. It is true that the Missouri Supreme Court held in *Norman* that the Eastern District's holding in *Julien v. St. Louis University*, 10 S.W.3d 150, 152 (Mo.App. E.D.1999), "should no longer be followed ... [t]o the extent inconsistent with this opinion." *Norman*, 100 S.W.3d at 785. While *Julien* held that "a reduction under section 537.060 'may be filed, considered and ruled at any time after the entry of judgment,'" it is clear that the Missouri Supreme Court only took issue with the fact that "*Julien* does not *specifically address the pleading requirement* for a reduction under section 537.060." *Norman*, 100

Finally, plaintiffs contend that this reduction issue must have been proven before the jury, and that this issue was somehow waived because Synergy "never attempted to prove [the] affirmative defense at trial." But plaintiffs fail to address that Missouri law holds that this specific reduction issue was *not* a proper jury issue in light of the fact that Plaintiffs do not dispute that the settlements at issue in fact occurred:

> When the issues relating to prior settlement payments are undisputed, the proper procedure is as follows:
>
> '[T]he parties should make a record out of the hearing of the jury regarding undisputed prior settlement payments made either as an advancement by the defendant or as a partial settlement payment by a joint tort-feasor. The trial judge, as a matter of law, then will take any prior payments into consideration and will credit them on the damages assessed by the jury's verdict as required by law.' MAI 1.06 Committee Comment
>
> However, if there is a disputed issue about whether there was a settlement payment, about whether a certain payment was attributable to a settlement, or about the amount of a settlement payment, 'this issue is submitted to the jury by modifying the damage instruction as required by MAI 7.02 and using Form of Verdict MAI 36.19.' *Id.*
>
> In this case, no factual disputes were submitted to the jury, and the trial court ruled as a matter of law.

S.W.3d at 785 (quoting *Julien,* 10 S.W.3d at 152) (emphasis added)). *Norman* simply clarified that a party cannot raise a reduction issue after trial if that party failed to raise the affirmative defense in its responsive pleading.

**20.** For the first time at oral argument, Plaintiffs argued that Synergy failed to prove that

*Gibson v. City of St. Louis,* 349 S.W.3d 460, 465 (Mo.App. E.D.2011).

In denying the reduction, the trial court ruled that Synergy "failed in its burden to prove its affirmative defense of set off [reduction]." But it is undisputed that in its motion to amend the judgment, Synergy attached the relevant settlement documentation that irrefutably proved that the underlying settlement in fact occurred. Specifically, both Darvin and Patricia Bentlage entered into a settlement with Wayne Nichols for the amount of $105,000 for *each of these plaintiffs*. Furthermore, Darvin and Patricia Bentlage entered into a settlement with Marcel Fischbacher for the total amount of $140,000. Accordingly, because plaintiffs *did not dispute* either on appeal or before the trial court, that Synergy was a "joint tortfeasor" with both Wayne Nichols and Marcel Fischbacher for the "single indivisible harm" that was caused by Synergy's utilization of their farms in their CAFO operations, we conclude that the trial court erred as a matter of law in failing to enter an order granting the reduction.[20] *Gibson,* 349 S.W.3d at 465–66. While better practice would have been for Synergy to raise the issue of the settlement and right to reduction in a written motion or in open court, on the record, as soon as Synergy became aware that a settlement had occurred and, if all of the evidence thereof was unavailable to present to the trial court before the jury retired to deliberate, to request the trial court leave the record open for receipt of the evidence regarding the settlement, as soon following the trial as practical, we

the settlements Plaintiffs entered into were for the same tort and damages at issue in the trial. We cannot consider issues raised for the first time during oral argument, and therefore refuse to address this issue. *Geneser v. State Farm Mut. Auto. Ins. Co.,* 787 S.W.2d 288, 289 (Mo.App. W.D.1989).

cannot find that, under the facts of this case that Synergy has waived this affirmative defense. Because the Plaintiff's did not dispute before the trial court, whether a settlement was made or the amount of the settlement, or even that the settlement was for the same damage, there was nothing to submit to the jury under MAI 1.06 or its comments on use, and therefore it was up to the trial judge to compute the credit. Point Seven is granted.

Like in Point Six, we conclude that, pursuant to Rule 84.14, our holding does not require a remand. "An appellate court may give judgment as the circuit court ought to have given, but only in circumstances that indicate there is no further need for proceedings in the circuit court." *DeBaliviere Place Ass'n v. Veal,* 337 S.W.3d 670, 679 (Mo. banc 2011). We, therefore, order the following relief pursuant to Rule 84.14:

■ As it pertains to the *Nichols Nursery* jury awards awarded against Synergy in favor of Darvin Bentlage (Verdict C–3) and Patricia Bentlage (Verdict D–3), we order that *both* of these separate $75,000 judgments against Synergy be reduced by the settlement amounts (for a total of $150,000). It is not disputed that the Bentlages entered into a settlement with Wayne Nichols in the amount of $210,000 ($105,000 for each individual) for the damage caused to their property by the CAFO identified as Nichols Nursery, and that therefore this amount exceeded the recovery awarded by the jury to the Bentlages against Synergy. After granting Synergy the $210,000 reduction based on the settlement, the $150,000 judgment (i.e. $75,000 each) against Synergy in favor of the Bentlages regarding the nuisance damages caused by the Nichols Nursery, these specific judgments are deemed satisfied.

As it pertains to the *Fischbacher Nursery* jury awards against Synergy in favor of Darvin Bentlage (Verdict C–4) and Patricia Bentlage (Verdict D–4), we order that *both* of their separate $75,000 judgments (for a total of $150,000) against Synergy be reduced by the settlement they entered into with *Marcel Fischbacher* in the amount of $140,000. Therefore the judgments in favor of Darvin Bentlage (Verdict C–4) and Patricia Bentlage (Verdict D–4), shall be reduced to $5,000 for each of these specific awards (for a total of $10,000). It is not disputed that the Bentlages entered into a collective settlement with *Marcel Fischbacher* in the amount of $140,000, for the nuisance damage caused to their property by the Fischbacher Nursery.

Point Seven is granted.

■ In Point Eight, Synergy argues that the trial court erred "by excluding evidence of the fair market value of the real property owned or occupied by respondents because such evidence constitutes competent, relevant and material evidence of whether respondents had been deprived of the use and enjoyment of their property as a result of the claimed nuisance in that the value of the real property is probative of its use and enjoyment." We disagree.

"The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion." *Mitchell v. Kardesch,* 313 S.W.3d 667, 674–75 (Mo. banc 2010) (citation and quotation omitted). "This standard gives the trial court broad leeway in choosing to admit evidence, and its exercise of discretion will not be disturbed unless it is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.* "We review the trial court's admission or exclusion of evidence under a deferen-

tial standard of review." *Ziolkowski v. Heartland Regional Medical Center*, 317 S.W.3d 212, 216 (Mo.App. W.D.2010). "On appellate review, the issue is not whether the evidence was admissible, it is whether the trial court abused its discretion in excluding the evidence." *Id.*

"When reviewing for an abuse of discretion we presume the trial court's finding is correct, and reverse only when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 872 (Mo. App. E.D.2009) (citation and quotation omitted). "Upon finding an abuse of discretion, this court will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative."

At trial, plaintiffs made a motion in limine to exclude any evidence pertaining to the fair market value of plaintiffs' property, which the trial court granted. Synergy then made an offer of proof of the fair market value of the plaintiffs' respective land holdings.

The crux of Synergy's argument is that "[e]vidence of the fair market value of real property owned or occupied by Respondents in this case tended to prove the extent to which their use and enjoyment of the property had been affected by the claimed nuisance caused by neighboring agricultural operations." But this Court has recently held that such evidence is *not* relevant in the context of a *temporary* nuisance claim:

> PSF focuses a large amount of its attention in its argument on the property value of the homes and farms in question compared to the awards received by the Respondents. PSF states in its brief that "[a]ny award significantly exceeding the total value of the property is far more than necessary to compensate a plaintiff for the temporary impairment in the use of that property and is grossly excessive." PSF, however, cites no authority to support this proposition. This was not a permanent nuisance case. "A nuisance is temporary if it may be abated, and it is permanent if abatement is impracticable or impossible." *Peters v. ContiGroup*, 292 S.W.3d 380, 385 (Mo. App. W.D.2009) (quoting *Hanes v. Cont'l Grain Co.*, 58 S.W.3d 1, 3 (Mo.App. E.D. 2001)). Here, the use of the land on which the hog operation is located is subject to change and the smell emanating therefrom is the result of the manner in which the land is used and not an inherent quality of the property itself. *See Hanes*, 58 S.W.3d at 3. This was a temporary nuisance case. The measure for damages for a *permanent* nuisance is the "difference in the land's market value immediately before and immediately after the injury." *Bruns v. Green*, 157 S.W.3d 368 (Mo.App. E.D.2005). An action for temporary nuisance includes, as was asserted in this case, non-economic damages, including inconvenience, discomfort and loss of quality of life. *See e.g., Brown v. Cedar Creek Rod & Gun Club*, 298 S.W.3d 14, 21 (Mo.App. W.D. 2009); *Peters*, 292 S.W.3d at 385 (Mo. App. W.D.2009). There is no authority for the proposition that a damage award is excessive if damages for the loss of the use and enjoyment of property exceed the actual market value of that property. Further, our legislature has recognized that there is an inherent additional value in a homestead that ex-

ceeds the fair market value of the property.

*Owens v. ContiGroup Companies, Inc.*, 344 S.W.3d 717, 728–29 (Mo.App. W.D. 2011).

Accordingly, we conclude that the trial court did not err in excluding this evidence at trial pertaining to the value of the plaintiffs' real property in light of the fact that it had no direct correlation to the value of the plaintiffs' damages pursuant to their temporary nuisance claims.

Even when assuming *arguendo* that this evidence was in fact relevant, Synergy does not even *attempt* on appeal to explain how the exclusion of this evidence resulted in outcome determinative prejudice beyond putting forth the following bare assertion: "Excluding the evidence had a material effect on the merits of the cause of action." Synergy's failure to articulate and demonstrate outcome-determinative prejudice on appeal is just further reason for this Court to deny this Point Relied On.

For all of the aforementioned reasons, Point Eight is denied.

In Point Nine, Synergy argues that the trial court "erred by admitting evidence of the Richland Township zoning ordinance vote because the evidence was prejudicial to the appellants in that it was irrelevant, immaterial and incompetent evidence that did not logically tend to prove or disprove a fact in issue and legally its admission was outweighed by its danger of confusing and misleading the jury and otherwise unfairly prejudicing Appellants."

As outlined in detail in Point Eight above, we review this evidentiary issue for an abuse of discretion.

■ Here, Synergy complains of two specific instances where the trial court allowed, over Synergy's objections, evidence regarding a vote that took place in the Richland Township (where the Plaintiffs resided) pertaining to zoning over commercial, large scale hog farming. At trial, plaintiffs' counsel cross-examined the Operations Manager for Synergy in the following manner:

Q. Even though you state that you don't know what percentage of people of the neighborhood community would have to object before it got Synergy's attention, you do know that 80 percent or more of the people in this Richland Township just objected to you all being there. You know that for a fact, don't you?

A. Yes.

Tr, 679.

Synergy also objected to the following cross-examination of their expert witness, Dwaine Bundy, PH.D.:

Q. Did you know that with regards to the Kenoma facility that the Richland Township tried to pass a zoning ordinance to invoke a similar rule to this that's right up there, a one-mile setback from all land application fields, and that the vote was 81 percent in favor of invoking that zoning ordinance? A. I didn't—I've not seen that.

Tr, 2164.

Synergy objects to this evidence on the basis that "[t]he outcome of the township vote was not relevant to the central question the jury was asked to decide, specifically whether the operation of the facility constitutes a nuisance." We conclude that the trial court did not abuse its discretion in finding that this evidence was in fact relevant under the facts of this case.

■ "Evidence is relevant if it logically tends to prove or disprove a fact in issue." *State ex rel. Missouri Highways and Transp. Com'n v. Greenwood*, 269 S.W.3d 449, 457 (Mo.App. W.D.2008) (citation and quotation omitted). "Logical relevance

has a *very low threshold.*" *Id.* (emphasis added).

 Here, plaintiffs had to present relevant evidence at trial in order to prove that Synergy's conduct constituted a nuisance. "The crux of a nuisance case is unreasonable land use." *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 880 (Mo. banc 1985). "There is no exact rule or formula by which the existence of a nuisance or the nonexistence of a nuisance may be determined." *Id.* at 881.

 This Court has previously held that this type of zoning evidence is relevant in proving a nuisance at trial. "The zoning of a district may be relevant for consideration in a nuisance claim but only as an indicia of *the relative freedom from pollution which neighboring property owners may expect.*" *Davis v. J.C. Nichols Co.*, 714 S.W.2d 679, 684 (Mo.App.W.D. 1986) (emphasis added). "Merely because an area may be zoned industrial (or business or commercial) does not justify the maintenance of a nuisance." *Id.*

We do not conclude that in all instances, evidence pertaining to zoning votes may be necessarily relevant, admissible evidence in a nuisance action because that determination is for the trial court in the first instance. But in this specific case because "[n]uisance is the unreasonable, unusual or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property," we find that the trial court did not abuse its discretion in allowing this evidence at trial. *Id.*

Specifically, to demonstrate an abuse of discretion, Synergy would have to show that the trial court's "ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Williams*, 281 S.W.3d at 872. Here, Synergy has not made that showing because this evidence tended to prove "the relative freedom from pollution which neighboring property owners may expect." *Davis*, 714 S.W.2d at 684.[21]

 Furthermore, even when assuming *arguendo* that the admission of this evidence constituted error, Synergy has failed to articulate how it resulted in outcome determinative prejudice at trial. "To warrant reversal, improperly admitted evidence must have prejudiced the defendant." *Asset Acceptance v. Lodge*, 325 S.W.3d 525, 529 (Mo.App. E.D.2010). "Unless the error materially affects the merits of the action, the judgment should not be reversed." *Id.* "A determination of prejudice by the erroneous admission of evidence depends largely upon the facts and circumstances of the particular case." *Kearbey v. Wichita Southeast Kansas*, 240 S.W.3d 175, 184 (Mo.App. W.D.2007). "The appropriate question then is whether the erroneously admitted evidence had any reasonable tendency to influence the verdict of the jury." *Id.*

---

21. Synergy argues on appeal that this evidence was not relevant at trial because the "Kenoma facility was not even built at the time the township vote took place." While this may be true, other similar facilities were operating in the community, and therefore we cannot conclude that it was an abuse of discretion for the trial court to find that this evidence was relevant to prove "the relative freedom from pollution which neighboring property owners may expect." *Id.* Further, Synergy was aware of this vote, and therefore the community's expectations at the time it built and began the operation of the Kenoma facility.

While Synergy argues that this evidence pertaining to the vote was "extremely prejudicial to Appellants," Synergy does not allege on appeal that *had this evidence not been admitted at trial that a different result would have been reached by the jury.* Rather, Synergy merely contends that that this evidence "misled and confused the jury," leaving this Court to speculate as to whether any alleged error materially affected the merits of the action. This alone is a basis for this Court to deny this Point Relied On. *Claus v. Intrigue Hotels, LLC,* 328 S.W.3d 777, 788 (Mo.App. W.D.2010) ("Because Appellant has failed to identify in its argument what prejudice it suffered from the trial court's admission of this evidence, there is nothing for this court to review."); *see also Scott v. Blue Springs Ford Sales, Inc.,* 215 S.W.3d 145, 165 (Mo.App. W.D.2006) ("Scott, in a very brief and conclusory fashion, argues that because the evidence in question was excluded it is obvious how this was simply not a fair trial of Scott's case. Scott makes no other claim regarding prejudice in this point. He fails to explain how the admission of the evidence in question would have made it more likely that the jury would have found for him on any of the three conspiracy counts against Balderston which were submitted to the jury. As a result of the substantial deficiencies in Scott's argument, we are at a total loss to understand what prejudice he is claiming that he suffered from the trial court's alleged error so as to constitute reversible error, entitling him to the relief he requests in Point II. As such, since Scott has wholly failed to advise us in his argument of what prejudice he suffered from the trial court's alleged trial error, there is nothing for us to review.").

Here, Synergy neglects to consider that at trial, plaintiffs presented voluminous evidence, unrelated to the townships' vote, as to how Synergy's conduct constituted a nuisance. Attempting to outline the totality of this evidence would be impractical at this time, especially when this Court need not do so in order to illustrate why Synergy's claim must fail on appeal. Synergy's own appellate brief illustrate how numerous Plaintiffs testified as to how the odors from the hog farms substantially impaired and interfered with their day to day enjoyment of normal, ordinary life activities because of such maladies as nausea and headaches. Plaintiffs further testified how after Synergy began its operations flies and rats infested their properties. Simply put, Synergy has not even attempted to argue that, had this complained of evidence been excluded by the Court at trial, a different result at trial would have somehow resulted. *Rouse v. Cuvelier,* 363 S.W.3d 406, 417 (Mo.App. W.D.2012) ("Rouse simply assumes on appeal that this evidence pertaining to pulling over to let other vehicles pass was prejudicial because it lead [sic] the jury to believe that [Rouse's] failure to pull over and allow trailing traffic to pass caused the accident at issue as reflected in the jury's assessment of 100% fault to [Rouse] in its verdict. We disagree. This argument neglects to consider ... that there was evidence at trial from which the jury could conclude that Rouse's *failure to look behind him* prior to turning left while operating the tractor at such a low rate of speed on a highway is what caused the accident.").

For all of these reasons, Point Nine is denied.

■ In Point Ten, Synergy argues that the trial court erred "by failing to sever the claims against former defendants Fischbacher and Nichols because the evidence pertaining to the Marcel Fischbacher and Wayne Nichols nurseries misled and confused the jury in that not all re-

spondents had claims against them but evidence regarding both the Nichols and the Fischbacher facilities was admitted at the trial which involved all respondents."

We outlined our applicable standard of review in *Guess v. Escobar*:

> The decision of whether to allow severance of claims is within the sound discretion of the trial court, and we will not disturb the ruling of the court absent an abuse of discretion. *Wilson v. Bob Wood & Associates, Inc.*, 633 S.W.2d 738, 743 (Mo.App. W.D.1981). A discretionary ruling is presumed correct, and an abuse of discretion only occurs where we find the ruling is clearly against the logic of the circumstances and so arbitrary and unreasonable that it shocks the sense of justice. *State ex rel. Sago v. O'Brien*, 827 S.W.2d 754, 755 (Mo. App. E.D.1992). In considering whether the trial court abused its discretion by refusing to sever, **we must keep in mind that "[t]he policy of the law is to try all issues arising out of the same occurrence or series of occurrences together."** *Bhagvandoss v. Beiersdorf, Inc.*, 723 S.W.2d 392, 395 (Mo. banc 1987).

26 S.W.3d 235, 239 (Mo.App. W.D.2000) (emphasis added).

Rule 52.05(a) pertains to permissive joinder and provides, in relevant part, the following:

> All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

Rule 52.05(b), in turn, pertains to "separate trials" and provides the following:

> The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a person as a party against whom the party asserts no claim and the person asserts no claim against the party and may order separate trials or make other orders to prevent delay or prejudice.

Prior to trial, Synergy filed a motion to sever the plaintiffs' claims "against Synergy and Kenoma as to the Kenoma sow farm from the remaining Respondents as to their claims against Synergy for the Nichols and Fischbacher nursery sites." Because the trial court denied the motion, Synergy claims that the jury was required to hear evidence "regarding the Nichols and Fischbacher nursery sites which was irrelevant to all Respondents' claims against the Kenoma sow farm ... [which] misled and confused the jury and Appellants were prejudiced by the admission of that evidence." Synergy's arguments significantly underestimate the dedication, intelligence and abilities of the members of our juries.

The Missouri Supreme Court has made clear that the touchstone in this area of law is whether the conduct at issue constituted a "series of transactions or occurrences" pursuant to Rule 52.05(a), which the Court has defined as following:

> The common meaning of series is a "group of ... events ... succeeding in order and having a like relationship to each other," which can include events that are in "temporal succession." WEBSTER'S THIRD NEW INTER-

NATIONAL DICTIONARY 2073 (1993). The definition of "series" does not require that the events be related to a common cause. Rule 52.05(a) requires that the series of occurrences be related by a common question of law or fact. *State ex rel. Nixon v. Dally,* 248 S.W.3d 615, 617 (Mo. banc 2008).

In arguing that the trial court abused its discretion in refusing to the grant its motion to sever, Synergy argues that certain plaintiffs "claimed no nuisance against Synergy for their alleged involvement with either the Nichols or the Fischbacher facilities." Specifically, Synergy argues that because some plaintiffs to the lawsuit had claims that stemmed from being in close proximity to the Kenoma facility, severance of the claims was mandatory because these plaintiffs "provided no testimony at trial regarding any odor or problems with the flies from the Nichols or Fischbacher facilities." We disagree.

As outlined above, the relevant inquiry pursuant to Rule 52.05(a) is whether the conduct at issue constituted a "series of transactions or occurrences" that were "related by a common question of law or fact." *State ex rel. Nixon,* 248 S.W.3d at 617. Based on Synergy's *own* summary of how the defendants worked together in running this pig farming operation in the Richland Township can leave no doubt that the trial court did not abuse its discretion in denying the motion to sever:

Kenoma operates a sow farrowing barn in Barton County, Missouri. The hogs located in the barn, and the pigs born to those hogs, are owned by Synergy. After the piglets are weaned from the sows in the Kenoma facility they are transferred to nurseries. Two of the nurseries to which the piglets are transferred are owned and operated by Wayne Nichols and Marcel Fischbacher. Wayne Nichols and Marcel Fischbacher operated nurseries under contracts with Synergy.... Paul Stefan owns the land and an irrigation system on that land where the effluent from the Kenoma wastewater lagoon is applied.

Br, pg. 8.

Based on Synergy's own summary of the operative facts, it is clear that these defendants were involved in a highly interrelated operation of pig farming in the same community. Therefore, based on our deferential standard of review, we fail to see how the trial court abused its discretion in concluding that the defendants were involved in a "series of transactions or occurrences," implicating numerous common questions of law and fact.

 As outlined above, in order to be properly joined under Missouri law, all of the plaintiffs' claims need not be *identical* to one another.[22] Rather, it is sufficient for this Court to say that all of the Plaintiffs' claims in this lawsuit were factually

---

**22.** Synergy's attempts to distinguish this matter from this Court's recent holding in *Owens v. ContiGroup Companies, Inc.* fails to illustrate that the trial court somehow abused its discretion in refusing to grant the instant motion to sever. In *Owens,* this Court dealt with the related issue of whether the trial court erred in consolidating plaintiffs' nuisance claims against the same defendant. 344 S.W.3d 717, 725 (Mo.App.W.D.2011). In concluding the trial court did not abuse its discretion in so consolidating the claims, we noted that the plaintiffs all "had the following questions of fact and law in common: (1) the same cause of action; (2) against the same defendant, (3) against the same hog operation in Gentry county; (4) identical claims that the odors from the hog operation were detrimental to the use and enjoyment of their property; and (5) the same time period, 1999 to 2010." *Id.* In essence, these claims in *Owens* were nearly identical to one another, but *Owens* does not stand for the proposition that it is an abuse of discretion to fail to sever claims if they do not demonstrate the nearly identical level of similarity that was present in *Owens.*

and legally interrelated because each claim: (1) alleged the same nuisance cause of action; (2) against defendants that were working jointly together to raise hogs, (3) in Barton County, Missouri, (4) based on similar claims that the odors from the hog operations were detrimental to the use and enjoyment of their property, and (5) during the same time period. For us to hold otherwise, would be to ignore that "[i]n considering whether the trial court abused its discretion by refusing to sever, we must keep in mind that "[t]he policy of the law is to try all issues arising out of the same occurrence or series of occurrences together." *Guess*, 26 S.W.3d at 239 (emphasis added).

Point Ten is denied.

### Conclusion

The judgment of the circuit court is affirmed in part, and reversed in part. Pursuant to Rule 84.14, this Court enters the following order *in lieu* of remanding this matter to the trial court:

I. Point Six is granted. Because we conclude that manifest injustice resulted in that Patricia Bentlage *and* Darvin Bentlage both received a double recovery on their duplicative nuisance claims against Synergy, this Court takes the corrective action of ordering that only one $75,000 nuisance judgment stand in each of their individual favor against Synergy; the second such judgment in each of their individual favor is hereby reversed and struck down pursuant to our authority under Rule 84.14. Therefore, this Court reverses and strikes down both "agency" nuisance awards in favor of Patricia Bentlage (Verdict D–6) and Darvin Bentlage (Verdict C–6) in the amount of $75,000 each.

II. Point Seven is granted. Because we conclude that Synergy was entitled to a reduction as a matter of law, as it pertains to the *Wayne Nichols* jury awards in favor of Darvin Bentlage (Verdict C–3) and Patricia Bentlage (Verdict D–3), we order that *both* of their separate $75,000 judgments against Synergy be deemed satisfied (for a total of $150,000), based on their settlements. Furthermore, as it pertains to the *Marcel Fischbacher* jury awards in favor of Darvin Bentlage (Verdict C–4) and Patricia Bentlage (Verdict D–4), we further order that *both* of their separate $75,000 judgments against Synergy be reduced to $5,000 awards each (for a combined total of $10,000), based on their settlements.

The judgment of the circuit court is in all other respects hereby affirmed.

All concur.