**ATLAS SECURITY SERVICES, INC.,**
**Plaintiff-Appellant,**

v.

**GIT–N–GO, INC.,**
**Defendant-Respondent.**

No. 13975.

Missouri Court of Appeals,
Southern District,
Division One.

April 29, 1987.

Dee Wampler, Wampler, Wampler & Catt, Springfield, for plaintiff-appellant.

Leland C. Bussell, Dale L. Davis, Bussell, Hough, O'Neal, Crouch & Hall, Springfield, for defendant-respondent.

WILLIAM J. MARSH, Special Judge.

Plaintiff, Atlas Security Services, Inc. (Atlas), appeals from an $8,520.77 judgment upon a jury verdict for that amount · in favor of defendant, Git-N-Go, Inc., on one of Git-N-Go's counterclaims. The jury found in favor of Atlas on Git-N-Go's counterclaim for breach of contract but no appeal was taken from that judgment. Atlas dismissed its petition against Git-N-Go prior to trial.

The evidence at trial reveals that Git-N-Go has operated a number of convenience stores in Springfield, Missouri, since 1970. Atlas sells, installs, provides and operates a variety of security or protective systems and services, and provided Git-N-Go burglar alarm services when Git-N-Go opened its first five stores in Springfield. In 1976, Git-N-Go decided to change its Springfield stores' security systems to those similar to, or the same as, the systems used in its Tulsa, Oklahoma stores. This involved Atlas obtaining and installing the necessary equipment and providing some monitoring of the systems' effectiveness. Git-N-Go paid Atlas for the equipment and its installation, and paid Atlas a monthly fee for monitoring the system and equipment in Git-N-Go's 23 stores, in accordance with the parties' written agreement covering each of the stores.

Differences between the parties arose concerning the effectiveness of the installations resulting in some changes to the systems by Atlas and some by a Tulsa company providing Git-N-Go security services there. Further differences or dissatisfactions on Git-N-Go's part resulted in its termination of monthly monitoring contracts with Atlas in November, 1979, and engagement of another security company for that purpose.

Atlas filed its petition for alleged breach of monitoring contracts in March, 1981, and amended petition in October, 1981. On or about July 27, 1983, while this case was pending, Atlas received a check in the mail in the amount of $8,520.77 directly from Git-N-Go's parent company in Tulsa. No release, settlement documents, or other explanation accompanied the check. Upon receipt of the check, Atlas' sales manager called Atlas' attorney and asked what should be done with the check. The attorney advised him to take the check to the bank on which it was drawn (Springdale, Arkansas), and to get a cashier's check for it. The sales manager did so immediately, with the knowledge and acquiescence of Atlas' president, who was also the sales manager's father-in-law. Atlas' usual practice was to deposit checks received in the course of business into its account. Atlas' evidence was that the amount of the check was "close, real close" to the amount allegedly due from Git-N-Go in principal plus accrued interest on the monitoring contracts. Atlas then dismissed its petition with prejudice on August 17, 1983.

The uncontroverted evidence clearly showed that Git-N-Go inadvertently issued and sent to Atlas the $8,520.77 check, and without intent to pay or settle Atlas' claim. Git-N-Go's accounts payable were all paid out of the office of its parent company, Hale-Hassle Co., located in Tulsa, Oklahoma. Hale-Hassle utilized a computerized system supported by human supervision and checking. When invoices were approved for payment, the invoice information was converted to computer numbers. Each vendor was assigned a five-digit number. When all of the relevant information and vendor number were placed in the computer, checks were generated in the amounts due or being paid to the various vendors. All such checks were verified against invoices to see that the vendor-payee and amount matched.

On July 25, 1983, when Git-N-Go had no account payable due Atlas, Atlas had an assigned vendor number of 04800. Git-N-Go did have an invoice due another vendor, Hartwell Oil Company, in the amount of $8,520.77. Hartwell's assigned number was 04880. In entering the information

into the computer to pay Hartwell, Atlas' vendor number was erroneously fed into the computer. As a result, the check in the amount of $8,520.77 was made payable to Atlas (04800) rather than Hartwell (04880). On that day, the Hale-Hassle regular employee responsible for matching the invoices with the computer-generated checks was absent. His replacement failed to match the payee's name on the check with the name on the invoice, matching only the amount, and the check was erroneously mailed directly to Atlas.

Git-N-Go had no knowledge of the error until some 10 to 12 days later when Hartwell called to inquire about the delay in payment of its invoice. The Springdale, Arkansas bank verified Atlas' transaction with the check. Direct efforts by Git-N-Go and its attorney to recover the check, or its equivalent, from Atlas were fruitless. Git-N-Go's amended counterclaim, adding a count for conversion of the check and a count for money had and received to the original claim for breach of contract, allegedly arising out of the 1976 transactions between the parties, was then filed, tried, and is the focus of this appeal.

On appeal, Atlas' first point relied on claims that the trial court erred in overruling its motion for judgment on the pleadings directed to Git-N-Go's amended counterclaim alleging conversion of the check.

■ Appeal lies only from a final judgment. § 512.020;[1] *Spires v. Edgar*, 513 S.W.2d 372, 373 (Mo. banc 1974). In order for a judgment to be final and appealable, it must dispose of all parties and all issues, except under certain limited circumstances not relevant here. *Hill v. Boles*, 583 S.W.2d 141, 147 (Mo. banc 1979); *Citizens Elec. Corp. v. Campbell*, 696 S.W.2d 844, 845 (Mo.App.1985). If a trial court sustains a motion for judgment on the pleadings, the judgment rendered may be a final appealable judgment. See, *Madison Block Pharmacy v. U.S. Fidelity*, 620 S.W.2d 343 (Mo. banc 1981). On the other hand, the trial court's order *overruling* Atlas' motion for judgment on the pleadings in this case was *not* a final appealable judgment. *Kilgore v. Kilgore*, 666 S.W.2d 923, 928 (Mo. App.1984). Cf. *Wilson v. Hungate*, 434 S.W.2d 580, 583 (Mo.1968). Atlas' first claim of error is denied.

In its second claim of trial court error, Atlas alleges that the trial court erred by submitting Git-N-Go's verdict directing instruction[2] on its conversion claim against Atlas because the facts and law did not entitle Git-N-Go to proceed and recover on a theory of conversion of money represented by a general debt. This appears to be the gist of Atlas' motion for judgment on the pleadings.

Atlas makes no claim that the instruction is not simple, brief, impartial, free from argument, or that it submitted or required findings of detailed evidentiary facts. Rule 70.02(e). Atlas' argument appears to rest upon general statements of like import found in *Dillard v. Payne*, 615 S.W.2d 53 (Mo.1981); *Anderson Electric Car Co. v. Savings Trust Co.*, 201 Mo.App. 400, 212 S.W. 60 (1919); *United States Fidelity & Guar. Co. v. Mississippi V.T. Co.*, 153 S.W.2d 752 (Mo.App.1941); *Breece v. Jett*, 556 S.W.2d 696 (Mo.App.1977), and *R.H. Kobusch Furniture & Carpet Co. v. Loewenberg*, 194 Mo.App. 551, 185 S.W. 747 (1916).

1. Unless otherwise indicated, all references to statutes are to Missouri Revised Statutes, RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. Git-N-Go's verdict directing instruction No. 12 on this claim reads as follows:

Your verdict must be for defendant Git-N-Go, Inc. if you believe:

First, defendant Git-N-Go, Inc. owned certain money represented by Git-N-Go Check No. 34252, in the amount of $8,520.77, dated July 25, 1983, and

Second, said money and check came into the possession of plaintiff Atlas Security Services, Inc., and

Third, defendant Git-N-Go, Inc. made demand upon plaintiff Atlas Security Services, Inc. to return said money, and

Fourth, plaintiff Atlas Security Services, Inc. has refused to return said money, and

Fifth, defendant Git-N-Go, Inc. is entitled to possession of said money, and

Sixth, as a direct result of plaintiff Atlas Security Services, Inc.'s refusal to return said money, defendant Git-N-Go, Inc. has suffered damages.

In *Dillard v. Payne,* supra, 615 S.W.2d at 55, the court stated the proposition that conversion does not ordinarily lie for money represented by a general debt, but applied the rule that when funds are placed in the custody of another for a special purpose, their diversion for other than such special purpose subjects the holder to liability in conversion.

In *Anderson Electric Car Co. v. Savings Trust Co.,* supra, 212 S.W. at 61, that court held that where defendant collected and kept the proceeds of three checks plaintiff claimed to own, plaintiff had no claim for conversion where plaintiff's action was for conversion of money collected on the checks which was not in any manner described so as to be identified, following the rule that trover does not lie for money had and received for payment of debts, money being the subject of conversion only when it can be described or identified as a specific chattel.

*United States Fidelity & Guaranty Co. v. Mississippi Valley Trust Co.,* supra, 153 S.W.2d at 756–7, suggests that where a guardian diverted a check, intended to be deposited in the guardianship account in defendant's bank, into his individual account with defendant and appropriated a substantial portion of the proceeds to his personal use, an action for the conversion of money charged to have been collected by the bank on a check does not lie. The court also noted that the relationship between a depositor and a bank is ordinarily that of a debtor and creditor.

*Breece v. Jett,* supra, 556 S.W.2d at 710–11, holds that conversion is not the proper remedy to recover on an ordinary debt nor is it the proper remedy for the withdrawal of money from a joint account because a joint owner has the right to withdraw funds from a joint account. That court recites the proposition that money is the subject of conversion only when it can be described or identified as a specific chattel.

In a case where a corporate officer who was authorized to draw checks on the corporate account drew a check on that account in favor of himself for salary claimed due, but in an amount in excess of plaintiff's concession, the court held conversion was not the appropriate remedy where the money was not entrusted to the officer for any particular purpose and it could not be described or identified as a specific chattel, but that an action for money had and received might be. *R.H. Kobusch Furniture & Carpet Co. v. Loewenberg,* 185 S.W. at 748.

There is no need here to question the relevancy of those conceptional statements as applied to the facts in the foregoing cases. In our view, those propositions are not applicable to the facts appearing of record in this case which bear no identity with the facts reported in those cases.

Here, there was no general debt in existence between these parties in either a commercial or a banking sense at the time the $8,520.77 check was issued and cashed and, secondly, the check was erroneously sent to Atlas with no intent that it be sent and paid to Atlas and, lastly, Git-N-Go's counterclaim pleading and instruction sufficiently alleged conversion of the check and sought recovery for its value.

In Missouri, "[a]ny distinct act of dominion wrongfully exerted over the personal property of another in denial of or inconsistent with the latter's right therein constitutes a conversion." *Eisenberg v. Nelson,* 247 S.W. 244, 247 (Mo.App.1923).

"As understood in this definition personal property includes choses in action such as notes, bills, checks, and other representatives of value, for a representative of value is itself a thing of value. A check, such as the one in controversy, is so regarded.... The measure of damages is prima facie the face value of the paper converted." (Citations omitted.) *Good Roads Machinery Co. v. Broadway Bank,* 267 S.W. 40, 42 (Mo.App.1924). In that case, plaintiff's judgment for the amount of the check on a theory of conversion was affirmed where the evidence and findings at trial revealed that plaintiff's employee presented and was paid a cashier's check tendered by one of plaintiff's customers in payment of its account with plaintiff, payable to plaintiff's order but, without authority, endorsed in plaintiff's name by its employee.

Defendant's action of cashing the check and paying the proceeds of the check to plaintiff's employee constituted the conversion of the check.

Similarly, in *Kansas City Casualty Co. v. Westport Ave. Bank*, 191 Mo.App. 287, 177 S.W. 1092, 1094 (1915), a judgment following a submission of a theory of conversion was affirmed where an employee of plaintiff's assignor presented a number of checks drawn on various accounts by assignor's customers in favor of assignor collected in the course of his duties for assignor. Without authority, this employee endorsed assignor's name by himself and had the proceeds deposited in his personal account. That court also held the measure of damages for the conversion of checks is prima facie their face value.

Where a broker erroneously delivered stock, a representative of value, of a greater par and actual value or different class than that of the same company ordered by his customer, who then refused to redeliver after demand by the broker, judgment against the customer on the submitted theory of conversion for the market value of the erroneously delivered stock at the time of its conversion was affirmed. *National Surety Corporation v. Hochman*, 313 S.W.2d 776 (Mo.App.1958).

In a later case, a brokerage firm mistakenly delivered wrong stock certificates to its customer. *Fireman's Fund Insurance Co. v. Trippe*, 402 S.W.2d 577 (Mo.App. 1966). The customer had ordered a low-priced stock of one corporation but the broker erroneously sent higher-priced stock of a different but similarly named corporation. Shortly after receipt of those certificates, the customer began selling them to other brokers over a seven-week period at considerable profit. The broker learned of the mistake when he was called upon to deliver the higher-priced stock being held for another customer. Upon inquiry the customer-defendant first gave the excuse he had not inspected the certificates but then admitted he had already sold the stock. Upon the customer's refusal to return the stock, or its equivalent in money, the brokerage firm's insurer made good the loss, then successfully filed suit against the customer on the pleaded and submitted theory of conversion. Judgment was affirmed. That court asserted that although the element of the defendant's knowledge of the broker's mistake may not have been essential to a conversion claim, knowledge of the mistake may be inferred from defendant's conduct. The customer's sale of the erroneously delivered stock was an authorized act of dominion over the stock and constituted conversion thereof. *Id.*, at 581.

This court has declared "[p]roof of conversion may be made in either of three ways: (1) by a tortious taking, (2) by any use, or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by refusal to give up possession to the owner on demand." *Glass v. Allied Van Lines, Inc.*, 450 S.W.2d 217, 220 (Mo.App.1970). We believe Git-N-Go's instruction No. 12 sufficiently submits the necessary findings to support a verdict based upon the second and third foregoing ways in which proof of conversion may be made.

■ The jury obviously believed the check was sent to Atlas in error, believed Atlas' conversion of the check to a cashier's check and retention thereof of its proceeds over Git-N-Go's protests and demands all indicated a claim of right in opposition to Git-N-Go's rights, believed that Atlas refused to give up its possession, or equivalent in money, upon Git-N-Go's demand, and that Git-N-Go's damage was the $8,520.77 face value of the check. The jury could have believed that Atlas had knowledge the check was sent by mistake when it was received directly from Git-N-Go during the instant litigation, without any settlement documents or explanations, and by Atlas' conduct in immediately converting it to a cashier's check at Git-N-Go's bank.

We believe that, considering the foregoing facts and circumstances of record in this case, and the authorities relevant thereto, the trial court committed no error in submitting instruction No. 12 and that

the jury's verdict thereon was amply supported by the evidence.

■ Ex gratia, it might be observed that instruction No. 12 might support an affirmative finding in this case on Git-N-Go's alternative claim for money had and received. An allegation of conversion is not inconsistent with recovery for money had and received. *Ralston Purina Co. v. Ryder,* 573 S.W.2d 128, 129 (Mo.App.1978). However, we are not called upon here to make that determination.

Judgment affirmed.

GREENE, P.J., and CRANDALL, CRIST, and KENNEDY, Special Judges, concur.