

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| HELEN SANDERS, | ) | No. ED110814 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Kristine A. Kerr |
| COLLEEN GOULD, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 16, 2024 |

## Introduction

This appeal arises from a dispute between two sisters over the purchase of a house. Helen Sanders alleged that her sister, Colleen Gould, promised her she would co-sign a loan so that Sanders could buy a house for her family. According to Sanders, instead of simply co-signing the loan, Gould purchased the house in Gould's name only and then told Sanders that she and her family could live there and make payments toward the mortgage. Sanders claimed that Gould promised to transfer title to Sanders when Sanders was more financially stable. After years of Sanders paying toward the mortgage and making improvements to the house, Gould refused to transfer title to Sanders.

Sanders sued Gould for fraudulent misrepresentation and sought damages based on the amount of money she had put into the house in mortgage payments and improvements. A jury found in favor of Sanders and awarded her damages. Gould appeals the verdict as to liability,

claiming there was insufficient evidence to support the falsity and reasonable reliance elements of fraudulent misrepresentation. We disagree and affirm the judgment entered on the jury's verdict.

After the jury trial, the trial court entered judgment on Sanders's alternative request for a constructive trust, ordering Gould to sell the house to Sanders. Gould appeals that judgment on the ground that it results in a double recovery to Sanders, allowing her to receive title to the house in addition to the damages awarded by the jury. We agree and reverse the constructive trust judgment.

### Factual and Procedural Background

Sanders was looking for a house to buy for her family. Sanders's and Gould's mother planned to loan Sanders money for a down payment. After many months, Sanders found a house that she was interested in buying, at which point Gould got involved in the matter. Sanders testified that Gould tried "to sell [Sanders] on the idea of [Gould] getting a mortgage in her name because her credit was better than [Sanders's] at the time." Gould also touted that she was "very smart" and had experience buying a house, whereas Sanders would be "confused" and "taken advantage of" without Gould's help. Sanders agreed that Gould should co-sign the loan for the house. Sanders understood that, as co-signors, both she and Gould would be on the title of the house, which was something she and Gould had discussed many times. But Gould did not honor that arrangement. Instead, without informing Sanders, Gould signed the mortgage loan and purchased the house in her name only, using a $21,000 loan she obtained from their mother for the down payment. Sanders learned this a week or two later and was "furious." She told Gould that she would not move into the house unless her own name was on the title. Gould responded by convincing Sanders that she had no choice but to live in the house because their mother would not loan her more money to buy another house. Sanders also believed it was unlikely she would find

2

another house for the right price.  Gould dismissed Sanders's concerns about not having her name on the title and told her that Gould considered this to be Sanders's house.  Sanders explained at trial:

> [Gould] said that the house is mine, I was being ridiculous.  She was my sister I could trust her, and that the house was mine, not to worry.  Oh, I'm being ridiculous I should calm down.  Of course the house is mine and me and the kids and, you know, my husband would all be happy there.

In later testimony, Sanders again described how Gould reassured her:

> [D]on't worry about it, I will sign it over to you.  We will add your name.  You will be okay. I won't screw you over, it will be all right, you should move in.  We'll give you the house just make all the payments, the house is yours.  It's your house it's not my house, why would I need two houses?  It's your house.

Sanders testified that Gould specifically represented that "she would have [Sanders] get the house when [Sanders] was in a better financial state," which, according to Sanders, meant when she was "earning more money."  Sanders testified that she relied on this representation when she began living in the house and making payments to Gould for the mortgage.  When Sanders was asked why she relied on that representation after how Gould had handled the purchase of the house, Sanders explained:

> Because [Gould] led me to believe that she would put the house in my name when I was able to get financing.  She . . . understood it was my house, and that if I paid all the mortgage, the tax, and the insurance that it, you know, yes, of course it was my house.  In fact, she would say of course it's your house.  And I even said why— you know, she doesn't need two houses, my mother would never [buy] two houses for her and none for me.

At trial, Gould denied promising to transfer title to Sanders, claiming instead that she told Sanders she could buy the house from her when Sanders was able to secure her own financing.  Gould repeatedly testified that her intent was for Sanders to "actually buy the house" when she was financially able to do so.

3

The house was not livable at the time Gould bought it, and Sanders paid for the repairs needed to obtain an occupancy permit. Sanders testified that she and her family moved into the house in the spring of 2009 and continued to make repairs and improvements. Years later, Sanders asked Gould for documentation to prove that Sanders was living in the house and paying Gould for the mortgage because Sanders needed that information to apply for certain government benefits. In response, Gould presented Sanders with a two-year lease backdated to December 15, 2008, which Sanders signed even though Gould would not correct the date.

In 2017, Sanders's income doubled and she informed Gould she was in a "better financial position" and was ready to take over the mortgage and title to the house. After Gould refused, Sanders filed this lawsuit in June 2017. The amended petition alleged that Gould fraudulently misrepresented that "once [Sanders] had a more stable financial situation, [Gould] would transfer the title and mortgage to [Sanders]." Gould filed a motion for judgment on the pleadings, arguing that the representation was too vague as a matter of law to be actionable. The trial court denied the motion, and the case proceeded to a jury trial in November 2021. At trial, Sanders sought damages to compensate her for the $55,000 in monthly payments she had made to Gould over the years, the $38,000 in repairs and improvements, and the $21,000 her mother loaned to Gould but wanted Sanders to have. The jury found in favor of Sanders as to her fraudulent misrepresentation claim and awarded her $95,000 in damages.

Gould also filed a claim for unpaid rent against Sanders based on the written lease, which was consolidated with and tried at the same time as Sanders's fraudulent misrepresentation claim. Sanders and her family still lived in the house at the time of trial, and she acknowledged that Gould had not accepted a payment from her since May 2017. The jury found in favor of Gould on this claim, awarding her $30,000 in damages for unpaid rent.

4

Sanders's amended petition also included an alternative request for equitable relief to be determined by the trial court. The constructive trust count alleged that Sanders had "a right, expectancy and interest in the ownership" of the house, which Gould "fraudulently deprived" her of by (1) falsely representing that Gould "would be a co-signor on a loan for [the house] when, in reality, [Gould] obtained a loan and ownership in her name only," (2) then falsely representing that she would transfer ownership of the house to Sanders when Sanders's financial position improved, and (3) falsely representing that Sanders's family could live in the house as long as Sanders made the mortgage payments. Sanders alleged that Gould had "been unjustly enriched by depriving [Sanders] of her ownership of [the house]" and requested that the trial court impose a constructive trust giving her "restitution" of the house.

Based on the evidence at the jury trial, the trial court entered a judgment granting Sanders's request for a constructive trust and ordered Gould to "convey title of the house to [Sanders] as follows:" (1) the parties "shall execute a standard Missouri residential sale contract, contingent on [Sanders's] ability to qualify for financing, with a sale price of $70,729.98" (based on the mortgage balance of $40,729.98 plus the $30,000 Sanders owed Gould pursuant to the jury's verdict for unpaid rent) and (2) Gould shall sign a "warranty deed conveying title to Sanders" at or before closing on the sales contract "with the proceeds used to pay off the mortgage so that the current deed of trust can be released." The trial court later supplemented the constructive trust judgment "to note that it made its findings and orders on that date by clear, cogent and convincing evidence." Gould now appeals.

**Discussion**

In her first three points on appeal, Gould challenges the judgment on the fraudulent misrepresentation count. We conclude those arguments have no merit. Gould's remaining two

points contend the trial court erred with regard to the constructive trust judgment. Because we agree with Gould that the constructive trust judgment resulted in an impermissible double recovery for Sanders, we grant her fifth point on appeal and deny her fourth point as moot.[1]

## Fraudulent Misrepresentation

To prove liability for fraudulent misrepresentation, a plaintiff must prove the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the defendant's knowledge of its falsity or ignorance of its truth; (5) the defendant's intent that the plaintiff act on that representation in the manner reasonably contemplated; (6) the plaintiff's ignorance that the representation is false; (7) the plaintiff's reliance on the representation being true; (8) the plaintiff's right to rely on it; and (9) the consequent injury. *DiSalvo Props., LLC v. Hall*, 616 S.W.3d 502, 507-08 (Mo. App. E.D. 2020) (internal quotation marks and citation omitted).

### *Point I - Motion for Judgment on the Pleadings*

In her first point on appeal, Gould contends that the trial court erred in denying her motion for judgment on the pleadings. According to Gould, the representation the petition alleged she had made was so vague that it was not actionable and she was, as a matter of law, entitled to judgment on the face of the pleadings. Sanders responds that the denial of a motion for judgment on the pleadings is not a final judgment and is therefore not appealable under section 512.020.[2] Gould counters that, because her appeal is from the final judgment entered at the conclusion of the case, she can challenge the trial court's earlier ruling on that motion even if she could not have appealed that ruling before there was a final judgment. In support of this argument, Gould relies on the portion of the statute providing that "failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the

---

[1] Gould's opening brief included a sixth point on appeal, which she has since withdrawn.
[2] All statutory references are to RSMo (2016), unless otherwise indicated.

6

trial court reviewed on an appeal taken from the final judgment in the case." Section 512.020(5). Gould does not cite—and we have not found—any case relying on that statutory language to permit a challenge to the overruling of a motion for judgment on the pleadings after a final judgment. In fact, the only case on point suggests that it is not permissible. In *Atlas Sec. Servs., Inc. v. Git-N-Go, Inc.*, 728 S.W.2d 727, 729 (Mo. App. S.D. 1987), after the trial court denied a motion for judgment on the pleadings, the case proceeded to trial, and the trial court entered a final judgment on the jury's verdict. On appeal, the appellant claimed the trial court erred in denying the motion for judgment on the pleadings and in submitting the verdict director, basing both claims on essentially the same grounds. *Id*. The *Atlas* court rejected the claim regarding the denial of the motion for judgment on the pleadings, concluding that such a ruling was not appealable under section 512.020, RSMo (1978) even though the appeal was from a final judgment and the court had authority to review the claim of error as to the verdict director. *Id*.

Here, if Gould had persisted in the vagueness argument raised in her motion for judgment on the pleadings by objecting to the verdict director on that same ground, then she would have been able to raise the denial of that objection on appeal, as did the appellant in *Atlas*. Because Gould did not do so, the only claim of error she has raised is not reviewable even though there is a final judgment in the case and despite the statutory language cited by Gould.

But even if this ruling were appealable, Gould has wholly failed to demonstrate that it was erroneous. For purposes of a motion for judgment on the pleadings, the facts in the petition are assumed to be true and the movant must demonstrate that those facts are insufficient to state a claim as a matter of law. *State ex rel Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 134 (Mo. banc 2000). "A trial court properly grants a motion for judgment on the pleadings if, from the face of the pleadings, the moving party is entitled to a judgment as a matter of law." *Id*. In this case, the

7

petition alleged that Gould "represented to [Sanders] that [Sanders] and her family could live at [the house], that [Sanders] would only have to pay the amount of the monthly mortgage payment to [Gould], and that, once [Sanders] had a more stable financial situation, [Gould] would transfer the title and mortgage to [Sanders]." Gould claims this allegation is insufficient as a matter of law because it lacks details regarding exactly how Sanders would receive the title and does not define financial stability. According to Gould, a fraudulent misrepresentation claim can be denied as a matter of law on the face of the pleadings when the representation alleged in the petition is too vague. But the cases she cites in support of this proposition did not involve judgments on the pleadings; they were appeals from judgments entered after a trial at which the *evidence* showed that the representation was too vague to warrant relief. *See Grosser v. Kandel-Iken Builders, Inc.,* 647 S.W.2d 911, 915 (Mo. App. E.D. 1983) (reversing jury verdict on fraudulent misrepresentation claim where "evidence fail[ed] to establish a sufficiently clear statement of intention [] that was false when made"); *Chase Resorts, Inc. v. Johns-Manville Corp.,* 476 F.Supp. 633, 639 (E.D. Mo. 1979) (concluding representation was too vague and abstract after considering the evidence adduced at bench trial). Again, Gould does not cite—and we have not found—any case affirming a judgment on the pleadings based on the vagueness of the representation alleged in a fraudulent misrepresentation petition.[3]

Therefore, even putting aside the fact that this claim of error is not appealable, Gould's argument has no merit. Point I is denied.

### Points II and III - Motions Challenging Submissibility

---

[3] We note that in *State Farm Fire & Cas. Co. v. Car/Bil, Inc.*, 842 S.W.2d 128, 131-32 (Mo. App. W.D. 1992), the court affirmed a judgment on the pleadings as to one defendant in a fraudulent misrepresentation case not because of the vagueness of the representation, but because the petition did not allege any participation in the fraud by that particular defendant.

In her second and third points on appeal, Gould contends the trial court erred in denying her motions for directed verdict and for judgment notwithstanding the verdict because the falsity and reliance elements of Sanders's fraudulent misrepresentation claim were not proven at trial. We review the denial of such motions *de novo* to determine whether the plaintiff made a submissible case. *DiSalvo*, 616 S.W.3d at 507. To make a submissible case, a plaintiff must present substantial evidence "to support every element necessary for liability." *Id.* (quoting *Barron v. Abbott Labs, Inc.*, 529 S.W.3d 795, 799 (Mo. banc 2017)). We view the evidence at trial in the light most favorable to the verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding all contrary evidence and inferences. *Id.* We will only reverse a jury's verdict for insufficient evidence "when there is a complete absence of probative fact to support the jury's conclusion." *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012).

### *Falsity of the Representation*

The representation at issue, as submitted to the jury in the verdict director, is that Gould told Sanders she "would be the owner of [the house] once [Sanders] was in a more financially stable position." Because the fraudulent misrepresentation claim was premised on a future act—Sanders becoming the owner of the house—she was required to prove "that at the time the statement was made the speaker did not intend to perform the act represented." *Stevens v. Markirk Constr., Inc.*, 454 S.W.3d 875, 881 (Mo. banc 2015); s*ee also Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 133 (Mo. banc 2010). Stated another way, "an unkept promise does not constitute actionable fraud unless the promise is accompanied by the defendant's present intent not to perform, which constitutes a misrepresentation of a present state of mind, itself an existent fact." *CADCO, Inc. v. Fleetwood Enters., Inc.*, 220 S.W.3d 426, 436 (Mo. App. E.D. 2007). The speaker's present intent is judged at the time the statement was made and in light of

9

the meaning that the plaintiff would reasonably give it under the circumstances. *See Renaissance*, 322 S.W.3d at 133.

Here, Sanders had previously made clear to Gould that she wanted her name on the title, and Gould had repeatedly assured Sanders that she considered it to be Sanders's house even though the title did not include Sanders's name. Gould promised she would "sign it over to" Sanders, "add [Sanders's] name" and "give [Sanders] the house" if Sanders made all the payments. Under the circumstances, Sanders understood that Gould would at some point transfer the mortgage and title to her, making official the fact that Gould already considered Sanders to be the true owner of the house. But, according to Gould's own testimony, that was never Gould's intent. Rather, Gould intended to *sell* the house to Sanders when she became financially able to purchase it. Intending to sell the house to Sanders is not the same as intending to transfer the title to her. Gould suggests that the phrase "become the owner of [the house]" as used in the verdict director is broad enough to encompass an intent to sell the house to Sanders. But nothing about the circumstances suggests that Sanders believed at the time the representation was made that she would have to buy the house from Gould—a house Gould repeatedly assured Sanders was already hers save for the official act of having her name placed on the title. Moreover, that inference is not favorable to the verdict and must be disregarded. *See DiSalvo*, 616 S.W.3d at 507. Viewed favorably to the verdict, the evidence showed that Gould convinced Sanders that Gould would simply transfer title to Sanders once she started earning more money, but that Gould actually intended to sell the house to Sanders if and when Sanders secured her own financing. In other words, there was substantial evidence from which the jury could conclude that the representation was false at the time it was made.

*Reasonable Reliance on the Representation*

A plaintiff asserting a fraudulent misrepresentation claim must prove that his or her reliance on the representation was reasonable. *Trimble v. Pracna*, 167 S.W.3d 706, 712 (Mo. banc 2005). Sanders can recover for fraud only if she "was justified, under the circumstances of this case, in relying upon the misrepresentations that were the basis of her fraud claim." *Id.* Those circumstances include "the nature of the transaction, the form and materiality of the representation, the relation of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and the respective knowledge and means of knowledge of the parties." *Stander v. Szabados*, 407 S.W.3d 73, 83 (Mo. App. W.D. 2013) (internal quotation marks and citations omitted).

Gould contends that Sanders "had no reason to trust" that Gould would simply transfer title to the house to Sanders one day, pointing to Sanders's description of Gould as having always been "manipulative, and a liar, and a thief" and her rueful comment that she had been "an idiot" to rely on Gould's representation. But Sanders made those statements in hindsight at trial *after* discovering that Gould's representations were false, not at the time of Sanders's reliance. And even if that testimony could give rise to an inference that Sanders's reliance was unreasonable, that inference would be contrary to the verdict and must be disregarded on appeal. *See DiSalvo*, 616 S.W.3d at 507. Viewed favorably to the verdict, the evidence showed that, from the outset of this transaction, Gould manipulated Sanders into believing and relying on her as the smarter, more experienced homebuyer. This set the stage for Gould to convince Sanders that her concern about not having her name on the title was "ridiculous." Gould used their sisterhood as evidence that Sanders could trust her repeated assurances that she considered Sanders to be the true owner of the house even though it was titled in Gould's name. In other words, Gould created in Sanders the very sense of security regarding ownership of the house that Gould now claims Sanders was

11

unreasonable for relying on. There was substantial evidence from which the jury could conclude that Sanders was justified under the circumstances in relying on Gould's representation that she would transfer the title to Sanders when Sanders was in a better financial position.

Because Gould has not demonstrated a complete absence of probative facts to support the jury's verdict against her on the fraudulent misrepresentation count, Points II and III are denied.

## Constructive Trust

Gould's remaining points on appeal challenge the trial court's imposition of a constructive trust. Our review is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). *See Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. banc 1993). Therefore, we will affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32.

### *Point V - Misapplication of the Law*

We turn to Gould's fifth point because it is dispositive. Gould contends the trial court misapplied the law by imposing a constructive trust in addition to the damage award because it violated the election of remedies doctrine and resulted in a double recovery to Sanders. We agree that there is a double recovery in this case and do not address the election of remedies argument.[4]

"It is a well-settled rule in Missouri that a party cannot be compensated for the same injury twice." *Norber v. Marcotte*, 134 S.W.3d 651, 661 (Mo. App. E.D. 2004). Stated another way, a "party is not entitled to be made more than whole or receive more than one full recovery for the same harm." *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 177 (Mo. App. W.D. 2012) (internal

---

[4] The election of remedies doctrine seeks to prevent double recovery and is "only applicable when a party has more than one remedy to correct a single wrong and the remedies are inconsistent." *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 178 (Mo. App. W.D. 2012) (emphasis removed). But the existence of a double recovery is itself grounds for reversal even if the election of remedies doctrine does not apply. *See id.* (finding election doctrine inapplicable because the remedies sought were not inconsistent, but reversing because judgments resulted in double recovery).

quotation marks and citations omitted).  At the jury trial, Sanders sought damages resulting from Gould's fraudulent misrepresentation.  A damage award is intended to make "the injured person whole by money compensation" and once made whole, that person is not entitled to "the windfall of a double recovery."  *Kincaid Enters., Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo. App. W.D. 1991).

In support of her request for damages, Sanders testified to the amount she spent in monthly payments to Gould and on the repairs and improvements she made to the house.  Sanders explained that, by making what she considered to be mortgage payments all those years, she believed she "was building equity[.]"  Having been awarded damages based on the amount she put into the house, Sanders was made whole—that is, she was put in the position she would have been in had Gould not convinced her to make those payments and improvements in reliance on her fraudulent misrepresentation that she would someday give the house to Sanders.  Had Gould kept her promise, Sanders would have gotten the benefit of the value she had been adding to the house.  Because Gould did not give her the house as promised, Sanders did not get that value, and the jury awarded her damages to compensate for that loss.

The problem in this case is that the constructive trust allows Sanders to *also* become the owner of the house, which necessarily includes the value that she added to it over the years and that she has already been compensated for in the jury's damage award.  It matters not that Sanders must purchase the house from Gould under the constructive trust because the end result is the same: Sanders becomes the owner of a house to which she added value and she got that value back in the damage award.  Together, the damage award and the constructive trust make Sanders *more than whole* for the single wrong of Gould's fraudulent misrepresentation by giving her the value she put into the house and the house itself.  *See Whittom v. Alexander-Richardson P'ship,* 851

13

S.W.2d 504, 506 (Mo. banc 1993) (noting that one whose horse has been stolen cannot be given "both the value of the horse and the horse itself" because that is a form of double recovery and "the legal version of the idea that one can't have his cake and eat it too") (quoting Dan B. Dobbs, Remedies, § 1.5 at 14 (1973)).  Because only the constructive trust—not the damage award—is appealed, that is the judgment we must reverse in order to prevent the windfall of double recovery.  Point V is granted.

### *Point IV - Sufficiency of the Evidence*

Gould's fourth point argues that there was not sufficiently clear, cogent and convincing evidence to support the trial court's imposition of a constructive trust.  We deny this point as moot in light of our reversal of the constructive trust judgment on the ground asserted in Gould's fifth point.

### Conclusion

For the foregoing reasons, the judgment entered on the jury's verdict is affirmed, and the judgment on the constructive trust is reversed.

_____
MICHAEL E. GARDNER, Judge

Kurt S. Odenwald, P.J., concurs.
Renée D. Hardin-Tammons, J., concurs.